BATEMAN *v.* RYDER.

*(Jackson.* April 13, 1901.)

1. MEASURE OF DAMAGES. *For conversion of personal property of special value to owner.*

For conversion of personal property, *e. g.,* pictures and unpublished manuscripts, which, by reason of association, or for other reason, is of peculiar value to the owner, such as it has to no other person, and is not susceptible of supply or reproduction in kind, the measure of damages is not the ordinary one of market value at time and place of conversion, but the actual value to him who owns it at that date. The valuation should be made, in such case, with reasonable consideration of and sympathy with the feelings of the owner. (*Post, pp. 713–715.*)

2. CHARGE OF COURT. *Correct as to expert evidence.*

It is not error for the Court to instruct the jury, in a case where the facts justify a charge upon the question, that "the testimony of experts introduced for the purpose of establishing insanity or mental unsoundness, if paid for, should be received with great caution and carefully weighed by the jury," adding that "it was lawful and proper for an expert physician to charge a reasonable compensation or fee for his professional opinion or services." (*Post, pp. 715–717.*)

Cases cited: Persons *v.* State, 90 Tenn., 291; Wilcox *v.* State, 94 Tenn., 112.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. J. S. GALLOWAY, J.

EDGINGTON & EDGINGTON for Bateman.

G. T. FITZHUGH for Ryder.

WILKES, J. This is an action of trover brought by a mother against her daughter and her husband for the conversion of a guitar, four pictures, and a trunk containing clothing and manuscripts of prose and poetry composed by the plaintiff's former husband.

The action was commenced before a Justice of the Peace, and the damages were laid at $500. There was a trial before the Court and a jury on appeal from the Justice, when there was a verdict and judgment for $200, and defendants have appealed to this Court.

The first three assignments go to the measure of damages.

Testimony was admitted to show a special value to plaintiff of the articles, because they were gifts from her former husband, and because of the associations connected with them. It is said this was erroneous.

It is said the Court charged the jury that in fixing the value of the property they should consider the plaintiff's relations to the same.

What the Court did charge on this point was "that the jury must determine, from all the evidence on that point, what would be a fair and reasonable value for the property, considering plain-

tiff's relation to the same and the rights of property."

The Court, upon request, refused to charge that the action, being in trover for the conversion of property, the measure of damages was the actual value of the property.

These assignments may all be treated together.

In actions of trover for the conversion of personal property, as a general rule, the measure of damages is the market or actual value of the property at the date of the conversion. 26 Am. & Eng. Enc. of Law, 818, and authorities there cited. But damages beyond the actual value of the property converted have been allowed the plaintiff when he has been subjected to some special loss or injury. 26 Am. & Eng. Enc. of Law,. 842.

"One criterion of damages is the actual value to him who owns it, and this is the rule when the property is chiefly or exclusively valuable to him—such articles, for instance, as family pictures, plate and heirlooms. These should be valued with reasonable consideration of and sympathy with the feelings of the owner." 3 Sutherland on Damages, page 476; *Suydom* v. *Jenkins,* 3 Sandf., 620; *Spicer* v. *Waters,* 56 Barb., 227.

In Hale on Damages, page 182, Sec. 76, it is said: "When property has a peculiar value to the owner, such as it has to no other person, or when it cannot be exactly replaced by other goods

Bateman *v.* Ryder.

of like kind, the actual value to the owner, and not the market value, is the measure of compensation."

The testimony shows that the four pictures were oil paintings bought in Italy by the plaintiff's husband at a cost of $500, and presented to her while traveling, and were valuable intrinsically as well as from association; that the original cost of the guitar was $50, and it was highly prized for its associations; that there was some considerable clothing in the trunk, besides a lot of manuscript productions in prose and verse of plaintiff's husband, which had never been published, and probably could not be reproduced. There is evidence, on the other hand, that the pictures were not well preserved; that their frames were dilapidated; that they would probably bring about $20 at auction, and that the guitar would perhaps sell for $5; that the clothing was worn and old, and of no real value, and that the manuscripts were of no value whatever.

We think the Court gave the proper instructions as to the measure of damages, and while we would have been better satisfied with a smaller judgment, there is ample evidence to support the amount given.

It is said that the trial Judge erred in charging the jury that "the testimony of experts introduced for the purpose of establishing insanity or mental unsoundness, if paid for, should be

received with great caution and carefully weighed by the jury."

The Court charged further upon this feature of the case, that "it was lawful and proper for an expert physician to charge a reasonable compensation or fee for his professional opinion or services."

We think that the rule laid down by the trial Judge is in substantial conformity to that announced in *Persons* v. *The State,* 90 Tenn., 291; *Wilcox* v. *The State,* 94 Tenn., 112.

It is said there is no evidence to support the verdict.

The facts of the case disclose an unpleasant litigation and controversy between a mother and her daughter and her husband.

It appears that the mother and daughter were in Los Angeles, California, in 1891. The daughter was then an unmarried woman and boarded with her mother. The mother had also another daughter with her by a second marriage. The two latter came to Memphis in 1891 and left the pictures, guitar, and trunk of clothing and papers with the defendant, paying her board for several months. At the expiration of that time, the board funds being exhausted, the defendant went to San Francisco and engaged in typewriting for a living. She subsequently married the defendant, Bateman, in Honolulu, in 1896.

She states that she sent the trunk to plaintiff

to New York. She kept the pictures, as she says, because they had belonged to · her father, and she understood had been given to her by her mother. The guitar she claims was given to her by her mother about fifteen years since, to practice on.

On the other hand, the mother says that the articles were left with the defendant for convenience and safe keeping, and that the daughter from time to time recognized her ownership in them, and promised to keep them for her.

The character of the plaintiff is attacked for credibility, and testimony is given by an expert physician that she is a lunatic of the type known to physicians as a paranoiac.

It is explained that the effect of this special type of the malady is a mania for litigation and an ungovernable desire and anxiety to be successful.

It would appear that this species of lunacy or mania is more common among attorneys than litigants. In this case, however, it is alleged to have attacked the client and affected her more than her lawyer.

The Court charged the jury, in substance, that they should receive the testimony of experts with caution; that if they found that any witness had been unsuccessfully impeached, or if they were satisfied that any witness was insane or mentally unbalanced, they could disregard such testimony if they saw fit.

Bateman *v.* Ryder.

We think the case was fairly left to the jury, and that there is no reversible error in the record, and the judgment of the Court below is affirmed with costs.