# PENNINGTON v. REDMAN VAN & STORAGE CO.
## et al.

No. 1928. Decided August 4, 1908 (97 Pac. 115).

1. EVIDENCE—VALUE OF PROPERTY CONVERTED—MARKET VALUE OR PRICE. The fact that property converted has no market value or price from which the actual value can be ascertained need not be made an issue, in order to authorize evidence of the cost of the property to show its value; it being sufficient, to justify such evidence, that the court is satisfied that such is the fact.[1]

2. APPEAL AND ERROR—HARMLESS ERROR—RULINGS ON EVIDENCE. Where, in an action for conversion, the record disclosed that the general rule of market value as the measure of damages was not applicable to the property alleged to have been converted, defendants were not prejudiced by the erroneous admission of evidence of the cost of such articles before proof had been given showing absence of market value.

3. TRIAL—EXCEPTIONS—SCOPE. An exception to an entire instruction as a whole was unavailable, where the excepting party conceded that a portion of the instruction was proper.[2]

4. APPEAL AND ERROR—HARMLESS ERROR—MISLEADING INSTRUCTIONS. Where, in an action for conversion, there was no direct evidence that plaintiff expended anything except time and car fare the amount of which was not shown, in regaining possession of a part of the goods converted, an instruction that the jury might allow plaintiff the costs and expenses, if any, which she had incurred, not including counsel fees, in obtaining possession of such articles, was not prejudicial to defendants, as misleading and unsupported by the evidence; it being presumed that the jury allowed only such expenses as had been incurred and proved.[3]

5. EVIDENCE—SECONDARY EVIDENCE—PRELIMINARY PROOF—EXISTENCE OF WRITTEN INSTRUMENT. Where, in an action for conversion, one of the defendants alleged the existence of a note signed by plaintiff, which was unpaid at the time he took the property, and under which he claimed the right to do so, his testimony that he at one time saw a note to which he claimed plaintiff's name was subscribed, without being able to state that it was her signature, was insufficient to establish plaintiff's execution of the note, so as to authorize secondary evidence of its contents.

---

[1] Smith v. Min. & Smelt. Supply Co., 32 Utah 21, 88 Pac. 683.

[2] Farnsworth v. Union Pacific Coal Co., 32 Utah 112, 89 Pac. 74.

[3] Leak v. Railway Co., 9 Utah 246, 33 Pac. 1045, affirmed 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160.

6. TRIAL—FINDINGS—EVIDENCE. A finding as to the value of property alleged to have been converted cannot be upheld, as a matter of law, unless it is based on some competent evidence.

7. TROVER AND CONVERSION—DAMAGES—PERSONAL PROPERTY—VALUE TO OWNER. In an action for conversion of articles of personal property, such as heirlooms, keepsakes, etc., plaintiff is not limited to a recovery of their market value, but may recover their value, based on a reasonable consideration of their sentimental value to her.

8. SAME—PUNITIVE DAMAGES. Where plaintiff, owning certain furniture, etc., on a portion of which defendant H. had an alleged lien for an unpaid portion of the price, stored the same and departed from the State without informing H. of her intentions after which he obtained the property from the storage company and sold a large portion thereof, and plaintiff, without knowledge of the sale, remitted the balance due and demanded a surrender of the property, such facts did not render either H. or the storage company liable, in an action for conversion, for punitive damages.

9. SAME—VALUE. Where, in an action for conversion of furniture, etc., plaintiff testified that most of the articles, though they had been used, were as good as new to her, and she would be required to pay the first cost price to replace them with others as good, the value of such articles converted, for the purpose of determining the damages plaintiff was entitled to recover, was not to be fixed by what others would have been willing to pay for such articles after the conversion and handling thereof by defendants, but by what they were worth to plaintiff for the uses and purposes for which she had them.

10. SAME—EXCESSIVE VERDICT. In an action for conversion of certain household furniture, etc., a verdict for plaintiff in the sum of $2,202 *held* excessive, and should be reduced to $1,130.55.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by K. A. Pennington against the Redman Van & Storage Company, and another. Judgment for plaintiff, and defendants appeal.

AFFIRMED, ON CONDITION.

*H. J. Dinniny* and *McGurrin & Guslin* for appellants.

*D. H. Wenger* and *E. B. Critchlow* for respondent.

APPELLANT'S POINTS.

That instructions not applicable to the case although absolutely correct, are apt to mislead the jury and such having such a tendency constitutes reversible error. (*Collins v. City of Jamesville,* 107 Wis. 436; *Sargent v. Mining Co.,* 55 Cal. 204; *People v. Tapia,* 131 Cal. 647; *Bank v. Skinner* [Cal.], 62 Pac. 705; *Penn. Canal Co. v. Harris,* 101 Pa. 93; *Skinner v. McAllister,* 21 Cent. 750; *State v. Cain,* 20 W. Va. 679; *White v. Thomas,* 12 Ohio St. 312; *C. B. & Q. Co. v. Anderson,* 38 Neb. 112; *Case v. Ill. Cent. R. Co.,* 38 Iowa 581; *Turner v. Bakers,* 42 Mo. 13.)

FRICK, J.

This is an action in trover, commenced by the respondent against the appellants, to recover the value of certain household goods which, she alleged in her complaint, the appellants had converted to their own use. The complaint contains the usual allegations in actions of this kind, and the answers, in addition to certain denials, contain matters in mitigation of damages. The evidence at the trial was very voluminous, and hardly admits of being stated in abridged form, so as to make a comprehensive statement of it, without devoting more space to such statement than is practical within the limits of an ordinary opinion. We shall therefore confine ourselves to a statement of such facts only as are deemed necessary to make clear the points decided. Such facts, substantially, are as follows:

In August, 1903, the respondent broke up housekeeping and packed up and stored her household goods with the appellant Redman Van & Storage Company, hereinafter, for convenience, designated as "Storage Company." During the spring and summer of 1903, and while she was conducting a private boarding house in this city, she purchased some furniture and other goods from the appellant Harris on the installment plan, for which she executed and delivered a conditional sale note, by the terms of which Harris

retained the title to the goods purchased until fully paid for by her. At the time she stored the goods there were upwards of $100 unpaid upon this note. Immediately after respondent had stored her goods as aforesaid, she left Salt Lake City, and went to the state of California, from whence she came in January, 1903. She did not inform either of the appellants that she was going away, nor did she inform them with regard to her future plans or proposed residence. She, however, says that she informed the Storage Company that the goods might be left in storage for probably a year. The manager of the Storage Company, while not directly denying this statement, testified that he did not know anything about respondent's plans or residence. The appellant Harris had no information with regard to either respondent's departure from the state or her whereabouts until a long time after the alleged conversion. In March, 1904, Harris learned from some source that the respondent had stored her goods with the Storage Company, whereupon he went to its manager and informed him that he (Harris) had a claim upon the goods by virtue of the note aforesaid. The manager of the Storage Company refused to surrender the goods to Harris unless the storage, packing, and hauling charges, amounting to $40.80, were paid. After some dickering the manager of the Storage Company reduced his claim to $30, which Harris paid, and took and removed the goods to his own store, and unpacked them, and sold some and stored others. At the time Harris obtained the goods he did not know what the boxes and packages in which they were packed contained, nor did the Storage Company know their contents. Harris, however, did not return any of the goods to the Storage Company upon learning their character and that he had no claim upon them, but kept all of them. Among the articles stored were some keepsakes, and a few which respondent designated as heirlooms, and other things, which had little, if any, pecuniary value, except to the real owner, and such value was entirely sympathetic or sentimental. The articles that the respondent had stored were very numerous, aggregating over seven hundred in all. The less bulky ones,

including carpets, beds, linens, tableware, glass and silver-ware, pictures, and other household and ornamental articles, were packed in a large number of boxes and in some barrels, while the bulkier ones, such as fancy bedstead, dressers, commodes, sewing machine, ice box, and a few others, were packed and crated separately.

Respondent, in her testimony in chief and upon cross-examination, which covers upwards of three hundred typewritten legal cap pages, described all the different articles, and produced a memorandum or list of them, which she claimed, with a few exceptions, she made at the time she packed the goods before storing them. Respondent had no communication with appellants, after leaving Salt Lake City, until in March, 1905, at which time she remitted to the appellant Harris the sum of $125; this being the amount she thought she still owed him on the goods bought from him. This amount appellant retained, but informed respondent that he had paid the storage on and had taken the goods, and had sold them, and that, after crediting her account with her remittance, there was a balance due her amounting to $48.45. Up to this time respondent supposed that her goods were all packed and stored with the Storage Company. She at once wrote to Mr. Harris and objected to what had been done, and some time afterwards, through one of her attorneys, demanded her goods. It then developed that Harris had not sold all of them, but had stored some away at his home, and he offered to return such as he still had to respondent. Some of them she accepted, and some she rejected on account of the condition they were in, and for the value of such as she did not accept and for those she did not obtain from appellants she brought this action, alleging the value of the lost goods at $1,800. She, however, prayed judgment for the sum of $3,000. The case was submitted to a jury, who found in favor of respondent and against both appellants, and fixed respondent's damages at the sum of $2,202. In passing upon the motion for a new trial the trial court conditionally reduced the amount of the verdict to $1,800, which respondent

accepted, and judgment for that amount was accordingly entered, from which this appeal is prosecuted.

The first alleged error to be noticed arises upon the admission of the testimony of respondent with regard to the value of the various articles of household and other goods. Respondent, after showing her knowledge with regard to the first cost of articles of the kind in question as a housewife and purchaser, was permitted to state the cost price of the several articles, and in connection therewith to state when, where, and by whom purchased, the length and character of the use of the different articles, the condition they were in at the time she stored them, and was also permitted to state the condition and value of each article as compared with new articles of the same kind or class. In many instances she placed the value of the articles which she had lost at the cost price, upon the ground, as she stated, that they were just as good as new, and in other instances she made allowance for use and wear, and reduced the value to the extent that, in her judgment, it should be reduced by reason of the use and wear aforesaid. It is now urged that the court erred in admitting this testimony, for the reason that the testimony with relation to the value of the articles should have been limited to the market value or price of the articles, and that general value or cost price as a basis of value should not have been admitted, unless it was made to appear that the articles the value of which was in issue had no market value, which, it is asserted, was not done. It is true that market price or value is the true basis from which the value of an article is to be ascertained in a court of justice; but, as we pointed out in *Smith v. Min. & Smelt. Supply Co.,* 32 Utah 21, 88 Pac. 683, it is not the only basis from which the actual value of articles may be ascertained in case such articles are not on the market and therefore may not have a market price or value.

This is conceded by appellants; but they urge that it cannot be presumed the articles did not have a market value, and before evidence of cost price is admissible it should be made to appear that the articles in question have no market value. It may be conceded that the general rule for ascertaining

value should first be resorted to, and that other methods should be permitted only after it is made to appear that the general rule cannot be applied. How must this be made to appear? Is it to be made an issue in the case? We think not. We think, if the trial court is satisfied that the articles in question have no market value or price, from which their actual value can be ascertained in accordance with the general rules, then he may permit the parties to resort to other known methods in ascertaining the actual value, as we have stated in the *Smith Case,* supra. Much no doubt depends upon the kind and character of the articles in question, and in connection with those all the surrounding conditions and circumstances should be considered in determining what evidence of value should be admitted. While in this case it was, perhaps, not affirmatively shown, before the trial court admitted the evidence of cost price, that the articles did not fall within the general rule, it does appear from the record that the articles in question were not generally on sale in the market, and therefore had no market price. Moreover, Mr. Paul, a witness for the appellants, in his testimony in substance stated that in buying such things people generally did not expect to pay anywhere near what such articles were worth and that unless they got them for much less than actual value they would not buy them at all. If we should concede, therefore, that the court erred, in view of the state of the evidence at the time he admitted the testimony of respondent, the record otherwise discloses that the general rule of market value was not applicable, and therefore, if any error was committed in the first instance, it is not available to appellants, since no prejudice resulted from its admission. In view of the whole record, we cannot distinguish this case from the *Smith Case* referred to, and we are of the opinion, upon the authority of that case, that this assignment should be overruled.

It is further asserted that the court erred in giving instruction No. 10, wherein the court directed the jury with respect to the measure of damages. The exception is, however, directed against the whole instruction, while in the brief and upon oral argument counsel only assail a part of the instruc-

tion. The instruction is not bad as a whole, and is not claimed to be so by counsel. It follows, therefore, as pointed out in the case of *Farnsworth v. Union Pacific Coal Co.,* 32 Utah 112, 89 Pac. 74, that there is nothing presented for review, for the reason that the exception to the instruction goes to the entire instruction. This assignment, therefore, cannot be sustained.

A portion of instruction No. 11 was duly excepted to and is now urged to be erroneous. In this instruction the court in substance told the jury that they might allow respondent the costs and expenses, if any, which she had incurred, not including counsel fees, in obtaining possession of that part of the goods which were returned to her and which she accepted. It is conceded by counsel for appellants that the instruction, abstractly considered, states a correct legal proposition; but it is urged that there was no evidence upon which to base it, and in view of the amount allowed by the jury it is claimed that they must have allowed for matters not supported by the evidence. It must be conceded that there is no direct evidence which shows that respondent expended anything save time and car fare in regaining possession of her goods, and the amount in money, if any, so expended is not shown. We do not think, however, that for this reason the case should be reversed. The presumption is that the jury followed the instruction of the court, which was to allow such expenses only, if any had been incurred; that is, if any had been proved. The court did not instruct the jury what to allow, nor to allow anything, but to make an allowance only in case it appeared from the evidence that respondent had incurred any expenses in that regard. We do not think the jury was misled by what the court said in this respect. A somewhat similar question was involved in *Leak v. Railway Co.,* 9 Utah 246, 33 Pac. 1045, affirmed in 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160. In that case there was neither pleading nor evidence to support the instruction, and still the court held that under all the circumstances disclosed by the record the error was not prejudicial. In view of the whole record, we are clearly of the opinion that no pre-

judicial error resulted to appellants in giving that part of the instruction complained of by them, and therefore this assignment cannot be sustained.

Another assignment of error is based upon the ruling of the court in excluding certain secondary evidence with respect to the contents of a certain conditional sale note, which the appellant Harris claimed respondent had made and delivered to him as evidence of the purchase of some of the articles in question, and to which Harris claimed title by reason of this alleged note. Respondent denied the execution and delivery of the note. Neither Mr. Harris nor any witness in his behalf testified to any fact or facts which justified the court in holding that such a note was ever executed by the respondent, even though the court had been justified in holding that there was some evidence that some such note at one time existed. It was not sufficient to show that a note existed at some time, but Harris was required to produce some competent evidence that tended to show that the note was one which was executed by the respondent. This he failed to do, and hence no secondary evidence of the contents of any note purporting to bind the respondent was admissible. The most the evidence tended to prove was that Harris at some time saw a note to which he claimed the name of respondent was subscribed, without being able to state that it was her signature. This falls far short of offering evidence which tended to establish the fact that respondent had signed the note. Upon this point the lack of competent evidence is so palpable that, if the court had permitted secondary evidence of the contents of the note, it would have constituted error against respondent. If promissory notes or written obligations could be established in the way it was attempted to be done in this case, no one would be invulnerable against claims of this kind. The court committed no error in excluding the evidence.

Numerous other errors are assigned relative to the admission and exclusion of evidence. None of these rulings require special consideration. In passing upon those it must suffice to say that we have carefully examined the whole evi-

dence as preserved in the original bill of exceptions, and we are clearly of the opinion that the court committed no prejudicial error either in excluding or in admitting any evidence of which complaint is made.

This brings us to the last assignment, which, as we view it, presents the only serious question in the case, namely: That the damages allowed by the jury, and as reduced by the court, are excessive, and not supported by the evidence. We remark that counsel for both parties have thoroughly sifted the whole evidence, and in doing so have set forth in a list in the printed abstract all the articles, together with the value as testified to by respondent. This has been a great aid to us in determining the question now under consideration. We have likewise gone over the entire evidence as preserved in the bill of exceptions, and from it have verified the correctness of the list prepared by counsel. In rechecking the list we have found some slight errors, both for and against both parties. The value, including all conjectural and speculative values of all the articles as testified to by respondent, after crediting the errors aforesaid, we find amounts to the sum of $1,412.15, instead of $1,376.60 as claimed by counsel for appellant, and $1,433.10 as claimed by counsel for respondent. From the amount as found by us must be deducted the sum of $173.45, which is the conceded value of the articles which belonged to Mr. Harris under his conditional sale note, referred to in the statement of facts. This would leave an apparent net value of $1,238.70. We say apparent net value, for the reason that in arriving at this amount we have taken the testimony of respondent exclusively as to values. This we are obliged to do. It was for the jury to weigh the evidence and pass upon the credibility of the witnesses. In case, however, where there is no competent evidence in support of any fact, or, as in this case, in support of the value of the articles as found by the jury, it becomes a mere question of law, since no finding can be upheld as a matter of law unless it is based on some competent evidence. Upon a very careful examination and rechecking of the whole of respondent's testimony with regard to values, we have found numerous in-

stances where the values testified to by her were entirely conjectural and speculative. Within this category we do not place any article for which the law permits a sentimental or sympathetic value, but only such as are governed by some fixed rules of evidence or measure of value. In such instances we have also been careful to make reductions only on such articles where there was some evidence, either direct or inferential, from which the actual value could be deduced. In making these deductions it is impractical to set forth the very numerous articles upon which they are made and to give our special reasons in each instance for our conclusions. Nor would it be of any value to the parties or any one else to do so. In view of the circumstances, after carefully going over all of respondent's testimony with regard to values, we find that the aggregate value of the articles amounts to $1,130.55, on which interest must be allowed at the legal rate from the date of the conversion, as stated by the court in his instructions to the jury, of which no complaint is made. There is no legal or competent evidence that we can find in the record which supports an amount in excess of the amount last above stated.

There are quite a number of small articles, which the respondent termed "heirlooms" or "keepsakes," upon which she placed no value in money, but said that gold or money could not have obtained them from her. They were not for sale at any price. As we have pointed out, the jury fixed her loss at $2,202.20, and the court reduced it to the value claimed by the respondent in her complaint, namely, to $1,800. Counsel for the appellants contend that the amount is excessive and is not supported by the evidence, while counsel for respondent assert that the law in certain cases permits a recovery in excess of the ordinary value for certain articles. This claim is based upon the doctrine stated in 4 Sutherland on Damages (3d Ed.), section 1099, where the author states the rule as follows:

"One criterion of damage may be its actual value to the owner, and this is the rule where it is chiefly or exclusively valuable to him. Such articles as family pictures, plate, and heirlooms should be valued with reasonable consideration of and sympathy with the feelings of the owner."

See, also, *Bateman v. Ryder,* 106 Tenn. 712, 64 S. W. 48, 82 Am. St. 910, where the rule is illustrated and applied. In view of this, it is asserted by counsel for respondent that the jury were authorized to fix the damages at the amount allowed by them, and that the trial court should not have disturbed the verdict, and in doing so, if any one was injured, it was the respondent, of which she does not complain, but insists that the amount as found by the trial court should not be further disturbed by this court.

We have no hesitancy in saying that the rule as laid down by Mr. Sutherland is just and salutary. In view of all the evidence, however, it can be applied only to a very limited extent in this case, and, so far as it can be, we have given it full scope in fixing the amount as stated above. The articles to which the rule could be applied were very few, and there was practically no evidence with respect to their cost, and where there is any the cost was shown to be insignificant. In addition to this there is no evidence with regard to the value of these articles, either sentimental, sympathetic, or nominal. There is no basis, therefore, from which either the court or jury could fix their value. The jury, no doubt, was influenced in arriving at the amount by the conduct of appellants, and especially the conduct of Harris, towards respondent after she demanded her property from him after the conversion. The case was, however, not submitted to the jury upon the theory of allowing punitive damages, and the jury were not authorized to allow such. In view of the facts that respondent had not obtained the title to all of the property, and had not fully paid for it, and had not paid either the costs of packing or storing, nor advised either of the appellants of her plans or residence, the appellants were justified in resorting to legal methods in obtaining the amounts due them. They had no right, however, to do it in the man-

ner in which it was done, nor could they claim anything in excess of their dues. ' The facts, therefore, are hardly such as would authorize punitive damages; but they are clearly such as require appellants to pay the respondent the full value of her property. This value is not to be fixed at what others would have been willing to pay after the conversion and handling of the articles by appellants, but at what they were worth to respondent for the uses and purposes for which she had them. In other words, if what respondent testified to is true, then most of the articles, although used by her, were as good as new to her; and, if this be so, she would be compelled to pay the first cost price to replace them with others just as good, and, if this be so, she is receiving no more than enough to make good her loss. This she is entitled to, and this, in view of all the evidence, she, in our judgment, is receiving by being allowed the value as we have stated it above. ' The jury gave her much more, and the court's allowance also exceeded this amount. We have no doubt that, if the trial court had thoroughly sifted the evidence with regard to value, he would have reduced the verdict to an amount supported by the evidence. In reducing the amount to $1,800, he evidently aimed to do so, but failed in this, because he did not have an opportunity to compare and add up the numerous items, and limit the amount to the actual value as testified to by the respondent, after excluding conjectural values.

We feel constrained to say that, if this were merely an ordinary case of conversion, we would be inclined to reverse the judgment unconditionally upon the ground that the jury allowed excessive damages. The case is, however, unusual in many of its features, and in view of the circumstances, and the apparent impossibility of the appellants to either justify their conduct or to replace the very numerous articles converted by them, it is not likely that any jury would very much reduce the amount found by the present one. We arrive at this conclusion because the verdict of the jury does not appear to have been based upon passion or prejudice, but seems to have been induced by what they considered a wrong

inflicted by appellants upon a helpless woman. While the conduct of appellants is not to be commended, it, in view of all the circumstances, nevertheless was not such for which punitive or exemplary damages could be allowed. The jury were, therefore, powerless to allow anything in excess of the value established by the evidence. Appellants, instead of seeking redress in the courts for any grievance they may have had against respondent, took her goods and chattels and dealt with them as they saw fit. They did this at their peril, and are not now in a position to invoke nice distinctions with regard to the measure of damages. But, even after conceding all this, the law does not require them to do more than to make full reparation for the pecuniary injury they have inflicted, where the action is one for conversion merely. Moreover, the case has been fully and fairly tried, and we believe that under the circumstances it would subserve neither the interests of justice nor of the parties to prolong the litigation. Respondent cannot complain if she is awarded the full value of her goods, and appellants should at all events be required to make good her loss in so far as this may be done under the rules of law and evidence in a case of this character. This we think they are required to do by paying the sum of $1,130.55, with legal interest thereon from the date of conversion. This amount, and no more, is supported by the evidence. In view of this, we will now do what the trial court should have done in passing on the motion for a new trial, namely, conditionally reduce the amount of the judgment to the amount that is supported by the evidence.

It is therefore ordered that the amount of the judgment be reduced from $1,800 to $1,130.55, with interest as aforesaid; that in case the respondent shall remit from the judgment the difference between the amount of the judgment as it now stands and the amount as stated above, and will file such remittitur with the clerk of this court within fifteen days after being notified of this decision, the judgment will be affirmed as modified; otherwise, it will be reversed, and a new trial ordered. In case the respondent shall not remit the amount from the judgment as above stated, but shall elect to have the

cause remanded for a new trial, she is required to pay the costs of this appeal; otherwise, neither party to recover costs.

McCARTY, C. J., and STRAUP, J., concur.