Harvey, Appellant, vs. Wheeler Transfer & Storage Company, Respondent.

*January 12—February 15, 1938.*

For the appellant there were briefs by *Velte & Molzow* of Neenah, and oral argument by *Chas. H, Velte,*

For the respondent there was a brief by *Melvin F. Crowley,* attorney, and *Allen B. Adams* of counsel, both of Menasha, and oral argument by *Mr. Crowley.*

FAIRCHILD, J.   In support of her claim, plaintiff contends for the right to show the actual value to her of the goods of which she was deprived by the act of the defendant. On the other side, the defendant asserts that the damages should be determined on the basis of value of secondhand goods.   Witnesses with considerable experience in the business of buying and selling furniture and household goods were examined.   Four of these witnesses were subpœnaed by the plaintiff and two by the defendant.   One of plaintiff's witnesses, a Mr. Krueger, and we use his testimony because of its representative character and because it was adopted by the referee as to the value of most articles in his finding on the plaintiff's theory, stated that the basis for his valuation was in every case "the fair and reasonable value in terms of money loss to Mrs. Harvey."   In the case of some items, *e. g.,* the occasional chair, he gave a valuation on the basis not of the replacement of the identical chair, but "what another chair might be had for that would be equally satisfactory to the owner."   With regard to other items, he used cost price less depreciation, for example: A new 9x12 Axminster rug would cost about $54 in 1933, "and so I have depreciated the rug to $45, figuring that it had approximately three years of use."   Defendant's witnesses, on the other hand, base valuation on what they termed the market value of used furniture or what Mrs. Harvey could have sold for in 1933.   Typical of the defense was the testimony of Mr. Saecker, one of defendant's witnesses, who clearly had in mind a sale where the seller had no alternative but to sell. He explained his estimates thus:

". . . But you got to place a value on an article of $100 and it was worth $50, and you would hold it for a long time,

but if I would put $40 or $45 value you would move it in a hurry. That was the idea. The idea was in bringing the money."

"*Q*. Then do I understand it correctly, if I say that the value you placed on it is what the Wheelers ought to reasonably to have expected to get upon a sale? *A*. Yes, sir."

Defendant's other witness, Konrad, stated that his opinion of values was based on "market value," but according to his testimony he had no knowledge of the existence "in this valley" of "what you call an open market on used furniture." There is an utter absence of testimony tending to evidence the existence of a market place to which one could go to purchase such articles as those of which plaintiff was deprived. The import of the testimony is that articles similar to those which she lost could be obtained only, if at all, after considerable search. Mr. Konrad testified: "I would not say that there is really a real market for used furniture, what you might call a steady market." And upon cross-examination he said, after his attention was called to the fact that he had used the term "used-furniture market,"

"There is really not a used market, such as we have in new furniture. In other words there are no centers to my knowledge where used furniture is handled and the market established."

And again the witness said there was not, to his knowledge, anything which he would call an open market for used furniture in the Fox river valley. Neither this witness nor any witness for the defendant based his figures on what the goods lost to the plaintiff might be worth to her. Further, it appears that defendant's witnesses placed "no value" on a number of items of furnishings, although admitting that they might still be of some use to the owner.

The trial court was of the opinion that the referee had followed the correct rule in assessing damages and approved

of his findings, but in view of the situation as disclosed by what has already been said, it follows that the findings of fact on which the conclusions were based were in some particulars, to be hereinafter pointed out, against the great weight and clear preponderance of the evidence, and that, as found by the referee, the plaintiff was entitled to recover damages, but in a larger amount than was allowed. The evidence offered by the parties was on differing theories of the law under which the amount of damages in such a case as this is to be fixed, and the referee accordingly made a report that on plaintiff's theory she should recover $1,645.25 on furniture and clothing and $2,490 on keepsakes, and on defendant's theory, the recovery should be $256, being entirely for some articles of furniture, and allowing nothing for keepsakes. The referee arrived at his own finding of $555, $383 for furniture and clothing and $172 for keepsakes, by following (roughly) defendant's theory as to items for which its witnesses testified there was market value and placing values on the articles of household goods not valued by defendant's witnesses and on the keepsakes.

The general rule of damages for the conversion or destruction of household goods kept for personal use is that—

"the amount of his recovery . . . ought not to be restricted to the price which could be realized by a sale in the market, but he should be allowed to recover the value to him based on his actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property; not including, however, any sentimental or fanciful value." *Barker v. S. A. Lewis Storage & Transfer Co.* 78 Conn. 198, 61 Atl. 363; *Rutherford v. James,* 33 N. M. 440, 270 Pac. 794, 63 A. L. R. 237, and note.

This rule excludes "market value" as the term was used by defendant's witnesses. The term "market," in order that market value may be considered just compensation in such a case as this, must imply not only that a person having a

particular piece of goods may readily sell it at the given value, but that some one who desires a particular piece may readily find and buy it at the given value. *Weber v. Wisconsin Power & Light Co.* 215 Wis. 480, 255 N. W. 261, a case involving store furniture and equipment kept for use in a going concern, held that where the evidence established that goods substantially similar in construction and condition to those destroyed might be bought in an established second-hand market, value in that market was the proper measure of damages. As to articles, however, having no such market value, but having a value to the plaintiff's going business, there was allowed him the replacement cost new, less depreciation. In the case before us, there was no evidence of the existence of a market in which articles approximating the converted ones sufficiently closely to be equally acceptable to the owner could be bought at less than the values testified to by Krueger and found by the referee to be the proper value on plaintiff's theory of the law. The testimony of defendant's witnesses that something "similar" to the two-piece mohair suite, the walnut book table, smoking stand, iron end table, sectional bookcase, dining-room suite, day bed, inner-spring mattresses, porcelain-top kitchen table, two white-enameled kitchen chairs, gas stove, and ivory rocker had been available in Neenah or Menasha in 1933 was insufficient to show that the plaintiff could have been made whole by purchasing articles offered in 1933, if they could be found. Indeed, some cases have interpreted the rule as to damages for loss of household goods as precluding as a matter of law consideration of cost of replacement with other property of like kind and condition, used. *Mathews v. Livingston,* 86 Conn. 263, 85 Atl. 529. It results that the undisputed evidence, under the rule to be used by the court in arriving at a conclusion as to the amount of damages, is such that the allowance for furniture and clothing made by the referee

in his finding as to value under the plaintiff's theory, to wit, $1,645.25, is the correct amount for those items, and is adopted as being the result of his determination of the credibility of the witnesses, and that findings to the contrary are against the great weight and clear preponderance of the evidence.

Defendant offered no testimony as to the value of the keepsakes, family pictures, and the like. Plaintiff did set a value upon them and offered testimony bearing upon their original cost. The rule of damages as to such articles is stated in *Bateman v. Ryder*, 106 Tenn. 712, 64 S. W. 48, quoting 3 Sutherland, Damages, p. 476:

"One criterion of damages is the actual value to him who owns it, and this is the rule when the property is chiefly or exclusively valuable to him; such articles, for instance, as family pictures, plate, and heirlooms. These should be valued with reasonable consideration of, and sympathy with, the feelings of the owner." See 3 Sutherland, Damages (4th ed.), p. 3399, § 919.

The opinion of the owner as to value is not conclusive, however. While recovery for a sentimental value cannot generally be had, the loss of such things as family pictures and heirlooms, which cannot be replaced and are valuable only to the owner, may be compensated to the extent of the reasonable special value of such articles to the owner. *Shewalter v. Wood* (Mo. App.), 183 S. W. 1127. The referee may consider the description of the article, its original cost, and facts relative to its association with the owner or his family, as well as the opinion of the owner as to its value, and accordingly measure the pecuniary loss suffered. The values set by the referee on the keepsakes here involved, totaling $172, do not seem so unreasonably low as to warrant their being set aside, and therefore must be allowed to stand.

*By the Court.*—Judgment modified so as to allow plaintiff damages of $1,645.25 for furniture and clothing, and $172 for keepsakes, in all, $1,817.25, with interest from May 23, 1933, and costs and disbursements, less $50 unpaid storage charges, and as modified, affirmed; plaintiff to have costs upon this appeal.