Paul Bruce BROWN et ux., Petitioners,

v.

FRONTIER THEATRES, INC., Respondent.

No. A–9404.

Supreme Court of Texas.

June 26, 1963.

Rehearing Denied July 17, 1963.

John P. Dennison, Pecos, for petitioners.

Richard L. Toll, Russell & Tomlin, Pecos, for respondent.

SMITH, Justice.

This suit was originally brought in the District Court of Reeves County, Texas, by James Perry Brown, Blanchelizabeth Brown, and her husband, Paul Bruce Brown, against Frontier Theatres, Inc., seeking damages for household and kitchen equipment, clothing, money, heirlooms and other personal property, which was destroyed in a fire on May 11, 1958. James Perry Brown was dismissed from the suit, and the cause went to trial before the court and a jury, with Blanchelizabeth Brown and her husband, Paul Bruce Brown, as the sole remaining plaintiffs and Frontier Theatres, Inc., as defendant. For convenience, the parties will hereinafter be referred to as the Browns and Frontier Theatres.

After approximately two days of trial before a jury, the jury was dismissed by agreement of the parties. The trial was completed before the court and resulted in a judgment in favor of the Browns and against the Frontier Theatres for the sum of $21,258.00 for loss of property, with interest from May 11, 1958, the date of the loss.

Frontier Theatres perfected an appeal to the Court of Civil Appeals for the Eighth Supreme Judicial District of Texas at El Paso. That Court has reversed the judgment of the trial court and rendered its judgment that the Browns take nothing. 362 S.W.2d 360. The judgment of the Court of Civil Appeals is reversed.

On and prior to May 11, 1958, the defendant was the owner of the Eagle-Drive-In Theatre. This theatre was destroyed by a fire which consumed the personal property involved in this suit. The drive-in theatre was a structure approximately 60 feet high and contained an apartment which occupied the lower 8 or 8½ feet. The upper 51½ or 52 feet of the structure consisted principally of a theatre screen on the interior portion and a large neon sign on the exterior.

This theatre was one of three owned and operated by Frontier Theatres, Inc., in the Pecos area and Mr. Russell Ackley was the city manager for Frontier Theatres, Inc. Mr. Ackley had authority to employ such personnel as was necessary for the operation of the business, and Mrs. Brown was employed by him to operate the Eagle-Drive-In Theatre. This employment began about August 24, 1957, and continued until the date of the fire. Under the terms of the employment agreement, the Browns were to live on the theatre grounds on a 24-hour day basis and would serve as caretakers of the defendant's property; they were to report to Mr. Ackley in the event

any repairs were needed; they were given no authority to make repairs and their responsibility was limited to reporting such needed repairs to the city manager.

Under the agreement, Frontier Theatres furnished the Brown family the apartment portion of the structure for use as a residence. The Browns were also furnished a ground site adjacent to the apartment, upon which they were permitted to place a trailer house which was used as a part of their residence. Mr. Ackley had full knowledge that the Browns had moved all of their personal property into the apartment and the trailer house.

The evidence indicates and the trial court found that the upper 51½ or 52 feet of the structure immediately above the apartment was under the exclusive management and control of Frontier Theatres and was not a part of the apartment. This upper portion of the structure, including the screen, the neon sign and all electrical wiring and appurtenances thereto, was retained by Frontier Theatres; and the maintenance thereof was the sole responsibility of Mr. Ackley. It was in this part of the structure that the Browns discovered electrical sparks emanating from the electrical wires connected to the neon sign. Mrs. Brown testified that sparks were "running up and down metal strips on the side of the building," that she pulled the switch and reported the trouble to Mr. Ackley; and Mr. Ackley sent an electrician to the scene. The electrician made some repairs and informed Mrs. Brown that it was safe to turn the switch and use the neon sign. The sparks again appeared, and Mrs. Brown again called Mr. Ackley. Mr. Ackley, when told that sparks were still "running up that metal strip," instructed Mrs. Brown to operate the neon sign. Mrs. Brown testified: "I asked him [Mr. Ackley] about it and he said that well, if the man [the electrician] said it was all right, you go ahead and operate it And to turn the lights on." Mrs. Brown testified that on Saturday of the same week the sparks were first discovered she had another conversation with

Mr. Ackley. This conversation took place at the State Theatre; and when told by Mrs. Brown that she was still concerned about the condition of the wiring because the difficulty had continued, Mr. Ackley said: "go ahead and use the lights. Or to use the sign." The sign was called the "Eagle." He said for me to "turn the eagle back on." Mrs. Brown testified that in view of this conversation she felt that it was safe to operate the neon sign.

The next day [Sunday] about 9 o'clock, when the evening show was in progress, the fire occurred. According to one of the patrons of the show on that evening, the fire was first seen at the "top right-hand corner" of the screen. This witness testified that on several occasions prior to the fire he had been in the apartment and was somewhat familiar with the premises and had knowledge of the fact that the Browns lived there. He also knew that the Browns had considerable personal property in the apartment and that upon seeing the fire, he went to the apartment and carried out some of the things. He testified that the fire was up in the tower structure above the apartment at first, that he was forced to stop going in and carrying things out because "the roof started falling in."

■ We have set out the evidence at some length in order to show a basis and support for the material findings of fact and conclusions of law by the trial court. It cannot be said as it was said in the case of Ditto v. Ditto Investment Company, 158 Tex. 104, 309 S.W.2d 219, that the filing of findings and conclusions was improper. In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it. See: Gulf

Liquid Fertilizer Company v. Titus, Tex., 354 S.W.2d 378 (1962); Elder, Dempster & Co. v. Weld-Neville Cotton Co., 231 S.W. 102 (Tex.Com.App.1921).

This case comes to us with the holding that regardless of whether the duties allegedly owed by Frontier Theatres with respect to the chattels involved be found to rest solely upon a master-servant relationship between the parties, or solely upon a landlord-tenant relationship; or, upon a finding that both such relationships existed simultaneously under the employment agreement, the Browns cannot recover. The Court of Civil Appeals gives several reasons for such holding, and those reasons will be briefly stated:

In discussing the landlord-tenant relationship theory, the Court seems to have based its conclusion that Frontier Theatres was under no duty to keep the premises in repair, and particularly was under no duty to repair the electric wires connected to the neon sign, unless there existed some type of contract or agreement between the landlord and tenant imposing a duty upon the landlord to keep the premises in repair, or a covenant to keep the premises in a reasonably safe condition. The Court held that since there was no such contractual obligation, Frontier Theatres was under no duty to repair the electric wiring, and that therefore, Frontier Theatres was not liable to the Browns.

The Court of Civil Appeals, in connection with its discussion of the master-servant relationship theory, observed that before there can be a recovery there must have been established, in a case such as this, that a legal duty was owed by one person to another; a breach of that duty; and damages proximately resulting from such breach. The Court recognized that where the relationship of the parties is that of master and servant, the duty need not be one imposed by contract between the parties, but may be one implied by law from the circumstances and relationship of the parties. The Court, however, held that a

legal duty on the part of the master to warn and protect the servant exists as to dangers only within the knowledge of the master and that no legal duty exists to warn and protect where the servant knows and appreciates the danger. The Court of Civil Appeals reached the conclusion that since the evidence was undisputed that the Browns knew of the dangers incident to the electric sparks originating in the wires connecting to the neon sign and knowing of such dangers and having voluntarily encountered them, they were not only barred from a recovery because Frontier Theatres had breached no duty, but because the Browns were also guilty of contributory negligence as a matter of law, in failing to remove their property from the premises. To support its holding on the issue of contributory negligence, the Court applied the rules announced in McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954).

In our opinion the evidence establishes that the parties to this suit occupy the dual relationship of master-servant and landlord-tenant. We are also of the opinion that if under the facts of this case Frontier Theatres has breached the duty owed to the Browns under either relationship, liability should be imposed upon Frontier Theatres for the loss of the personal property of the Browns.

### Landlord-Tenant

Frontier Theatres concedes in their brief in the Court of Civil Appeals that under the undisputed testimony the relationship of landlord and tenant existed. Therefore, the only question here presented is whether the landlord, Frontier Theatres, owed such a duty to the tenant, the Browns, as would render it liable for the loss or damage to the personal property involved.

The following is a summary of the findings of the trial court which are important to the resolving of the issue here presented: (1) the upper 51½ or 52 feet of the tower above the apartment, the screen, the neon sign and all electrical wiring and apparatus

pertaining thereto was under the *exclusive* management and control of Frontier Theatres, and was the *sole* responsibility of Mr. Ackley; (2) the fire was caused by and resulted from defects in the electrical wiring connected to the neon sign in that portion of the tower over which Frontier Theatres retained *exclusive* management and control; (3) the electrical defects were reported to Mr. Ackley prior to the fire, and that Mr. Ackley failed to have such electrical wiring repaired, and that Mr. Ackley instructed Mrs. Brown to continue the operation of such theatre, using such neon sign; and (4) the Browns were following and relying entirely upon such instructions at the time the fire occurred. Such findings are clearly supported by the evidence.

■ In our opinion these facts bring this case within the rule that where a landlord retains possession or control of a portion of the leased premises the landlord is charged with the duty of ordinary care in maintaining the portion retained so as not to damage the tenant. Archibald v. Fidelity Title and Trust Co., Tex.Civ.App., 296 S.W. 680. When such duty is breached and damage results therefrom, the landlord is liable to the tenant who suffers injury due to the defects in the portion over which possession or control is retained. See: Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585. Therefore, by the retention of control of the upper portion of the tower structure, Frontier Theatres was under the duty to maintain and operate that portion in a reasonably safe and prudent manner so as to prevent damage to the Brown's property located in the lower portion of the tower. This Frontier Theatres failed to do.

The trial court has found that Frontier Theatres was negligent in failing to repair the electrical defects that were the cause of the fire, and that Frontier Theatres' negligence in this regard was the proximate cause of the fire that resulted in the loss of property to the Browns. We are of the opinion that the findings of negligence and proximate cause must be sustained, and that Frontier is liable for the damages that resulted unless the Browns were contributorily negligent.

### Contributory Negligence

■ Frontier Theatres would have us hold that Mrs. Brown was contributorily negligent as a matter of law in continuing in occupation of the premises with knowledge that there was some defect in the electric sign, and in failing to use the means at hand of which she had full knowledge, to turn off the sign and thereby prevent the fire. In our opinion the record in this case will not support such a conclusion.

The record establishes that upon receipt of information that there was some difficulty in the electrical equipment, Mrs. Brown pulled the electrical switch and stopped the sparks. Immediately thereafter she called Mr. Ackley, the landlord's city manager, who told her that he would have the defect repaired. A repairman for the sign company worked on the lights and told Mrs. Brown that the sign was safe and assured her that there was definitely no danger in the sign because he had never known of a fire starting from neon. Subsequently, sparks were again noticed, and again Mrs. Brown notified Mr. Ackley about them. Mr. Ackley stated that if the repairman said it was all right, then the lights were to be turned on. The mere fact that Mrs. Brown knew of these sparks and knew that they constituted a dangerous condition does not necessarily make Mrs. Brown contributorily negligent as a matter of law. McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442.

■ Contributory negligence such as will bar Mrs. Brown from recovering for the damage to her property would necessitate a holding by this court that the only rational inference that can be drawn from the above stated facts is that Mrs. Brown's conduct fell below the standard of reasonable care, and that her failure to act with reasonable care was a legally contributing

cause, co-operating with the negligence of Frontier Theatres in bringing about her loss. It is the general rule in Texas that where the undisputed evidence establishes the existence of a danger and the injured party has knowledge or is chargeable with knowledge of the danger and, without justification, exercises no care whatever, then there is shown a case of contributory negligence as a matter of law. Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904, wr. refused. Gulf, C. & S. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227. But where, as here, there is some evidence of care and the question is one of the sufficiency of the care taken, it cannot be said as a matter of law that there is contributory negligence. Lang v. Henderson, supra; Henwood v. Gilliam, supra. That Mrs. Brown was contributorily negligent is not the only rational inference that can be drawn from the facts; therefore, she cannot be held to be guilty of contributory negligence as a matter of law.

### Damages

In awarding damages the trial court divided the items for which recovery was allowed into six categories: (1) items having market value; (2) used or secondhand household items, clothing, etc.; (3) household utensils, equipment, etc.; (4) furniture, books, bedding, linens, etc.; (5) miscellaneous personal property; and (6) irreplaceable goods and chattels. Frontier Theatres does not complain of the damages awarded by the trial court for the items listed under the first five categories; however, complaint is made that there is no evidence to support the award of $4,833.29 in damages for the following items which are classified as irreplaceable goods and chattels; two slumber spreads ($666.66); one wedding veil, shoes and point lace collar ($666.66); one key-wound heirloom watch ($666.66); two emerald rings ($933.33); one 36 cal. Colt pistol and holster ($500.00); one English letter box ($233.33); one cameo pin ($333.33); one coin collection ($666.-66); and one land patent or deed signed by U. S. Grant ($166.66). The record re-

veals that each of these items was completely destroyed by the fire, and that their character was in the nature of heirlooms. In making its award of damages the trial court deducted ⅓ of the evaluation placed on each of these items by Mrs. Brown; but since no contention has been made by Mrs. Brown that the trial court erred in this regard, we need not consider the propriety thereof.

Frontier Theatres does not attack the reasonableness of the award of damages as to any of these items, but it is Frontier Theatres' position that there is no evidence such as will support the award of damages made. In view of the disposition of this case by the Court of Civil Appeals this issue was neither considered nor disposed of; the issue is now properly before this court. We disagree with Frontier Theatres' contention.

The law recognizes that articles of small market value of which their owner is despoiled may have a special value to him as heirlooms, and there is evidence in the record that with the exception of the coin collection and the land patent the primary value of these items to Mrs. Brown was their sentimental value. For example: the wedding veil, one of the emerald rings, the shoes and the point lace collar belonged to her grandmother; the pistol belonged to her grandfather; the watch belonged to her great grandmother; and the two slumber spreads were made by hand by her great, great, great grandmothers.

As a general rule recovery for sentimental value for personal property cannot be had in a suit for the loss of property for personal use such as wearing apparel and household goods. International & G. N. Railway Co. v. Nicholson, 61 Tex. 550; See also: 1 Sedgwick on Damages, § 251. This rule has been applied in Texas so as to deny the recovery for sentimental value in a suit for the loss of heirlooms. St. Louis, I. M. & S. R. Co. v. Green, (1906), 44 Tex.Civ.App. 13, 97 S.W. 531, no writ hist. However, in our opinion such is

not the rule to be applied in a suit to recover for the loss or destruction of items which have their primary value in sentiment.

■ It is a matter of common knowledge that items such as these generally have no market value which would adequately compensate their owner for their loss or destruction. Such property is not susceptible of supply and reproduction in kind, and their greater value is in sentiment and not in the market place. In such cases the most fundamental rule of damages that every wrongful injury or loss to persons or property should be adequately and reasonably compensated requires the allowance of damages in compensation for the reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property. Green v. Boston & Sowell Railway Co., 128 Mass. 221, 35 Am.Rep. 370; Bateman v. Ryder, 106 Tenn. 712, 64 S.W. 48; Pennington v. Redman Van and Storage Co., 34 Utah 223, 97 P. 115; Harvey v. Wheeler Transfer & Storage Co., 227 Wis. 36, 277 N.W. 627; see also: 4 Sutherland on Damages (4th ed.) § 1099; 6 Joyce on Damages, § 1121; 63 A.L.R. 240, 261; 12 A.L.R.2d 902, 929; 15 Am.Jur.—Damages, § 127. Where such special value is greater than the market value, it becomes the only criterion for the assessment of damages. Shewalter v. Wood, Mo.App., 183 S.W. 1127.

■ As to the coin collection and the land patent signed by U. S. Grant, there is no evidence in the record either as to their market value or their sentimental value; therefore, the award of damages for the coin collection in the amount of $666.66, and the award of damages of the land patent in the amount of $166.66 is not supported and no recovery may be had therefor.

The judgment of the Court of Civil Appeals is reversed, and judgment is here rendered that the Browns take nothing on their claim for damages for the loss of the coin collection and the deed signed by U. S.

Grant. In all other respects, the judgment of the trial court is affirmed. All costs are adjudged against Frontier Theatres, Inc.

GRIFFIN, J., dissenting.