6985

FUNDERBURG v. AUGUSTA AND AIKEN RY. CO.

Street Railway—Passenger Fare—Reasonable Rule—Wilfulness.—A rule requiring a conductor to give change to the amount of $1.95 for a five-cent fare, and no more, except in his discretion, is reasonable, and there is no evidence here tending to show the rule has been habitually disregarded or waived. Here there is no evidence tending to show any wilful disregard of duty to a passenger by refusal of conductor to change a five-dollar bill for a five-cent fare, although he had then more than five dollars in change, and upon failure of passenger to pay or present a smaller bill, in the conductor requesting him to leave the car, which he did at the next stop without rudeness or violence.

Mr. Justice Gary *dissents.*

Before Prince, J., Aiken, February, 1908.    Reversed.

Action by A. M. Funderburg, by guardian, against Augusta and Aiken Railway Company. From order affirming judgment of Magistrate D. H. Turner, defendant appeals.

*Messrs. Boykin Wright, George T. Jackson* and *J. B. Salley, for appellant,* cite: *Rule requiring change of two dollars only is reasonable:* 35 L. R. A., 489. *Carrier is not bound to publish rules for governing employees:* 10 J. & S., 128; 34 Am. R., 277; 35 L. R. A., 489. *Occasional departure from rule does not show waiver:* 51 S. E., 119; 27 Ency., 1038.

*Messrs. Hendersons,* contra, cite: *Must the carrier furnish any change?* 15 Am. St. R., 61; 56 Am. St. R., 626; 35 L. R. A., 489; 28 Ency., 167; Hutch. on Carriers, sec. 567b; Elliott on R. R., sec. 1063; 6 Cyc., 487. *The rules should have been published:* 68 S. C., 352; 61 S. C., 506. *It has been habitually disregarded:* 71 S. C., 303; 28 Ency., 197; 52 Am. St. R., 579. *And of this the officers of the company must take notice:* 52 Am. St. R., 579.

July 29, 1908.  The opinion of the Court was delivered by

Mr. Justice Jones.   We are convinced that there should be a new trial on the ground that there was no evidence tending to show any wilful disregard of duty to plaintiff.

The plaintiff on November 10, 1907, boarded defendant's train at Langley to go to Warrenville.  When the conductor demanded the usual fare of five cents, plaintiff tendered a five-dollar bill.  The finding of fact, which is conclusive on this Court, since there is some conflict in the testimony, is that the conductor had more than five dollars in change at the time.  The following rule of the defendant company was in force at that time:

"Order No. 240.                    November 4, 1907.

"Notice to all conductors:

"Owing to the scarcity of change, and impossibility of our conductors being able to supply change for amounts over \$2.00, tendered for car fare, conductors on both divisions are hereby notified that they are not required to give more than \$1.95 in change for a single fare.

"Conductors are requested to accommodate passengers, if possible or convenient, for amounts exceeding \$2.00.

"If sums of \$5.00 or more are offered, conductor should take the amounts and request smaller change, and if passenger cannot or will not tender a smaller amount, conductor should ring up fare and notify passenger that change will be handed him at office of company, or at end of line. Demand name and address at same time, for conductor's protection.  Augusta-Aiken Railway & Electric Company. E. P. Whetmore, General Manager."

The plaintiff testified that he had no notice of such rule, and we are bound by the finding of the Circuit Court that the rule had not been brought to the attention of the traveling public in any manner, as it cannot be said that such finding was wholly without evidence to support it.

When the plaintiff tendered the five-dollar bill, the conductor informed him that it was against the rules of the

company to change over a two-dollar bill. The plaintiff declined to leave the bill with the conductor to be changed at the end of the line, whereupon the conductor informed him that he would have to pay his fare or get off at Gloverville. On reaching Gloverville, the conductor informed the plaintiff that he would have to get off, whereupon plaintiff left the train, waited an hour for the next train, and pursued his way. There was not the slightest evidence of rudeness or violence on the part of the conductor towards the plaintiff. Assuming that it was his duty to enforce the rules of the company, it must be conceded that he breached no propriety in the manner of its enforcement.

The case of *Gwynn* v. *Telephone Co.,* 69 S. C., 434, 48 S. E., 460, 67 L. R. A., 111, is authority for the proposition that "a tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or a conscious disregard of the rights of others, will not warrant the giving of damages for punishment."

The defendant company unquestionably had the right to adopt reasonable rules for the transaction of its business, and it is the duty of the passengers to comply with such rules. The Circuit Court has found in this case that "a tender of five dollars to pay a five-cent fare would be disproportionate to the amount of the fare, and that under a proper rule on the part of the carrier upon the subject, in existence and actually enforced, the carrier could not be forced to furnish change for so large an amount." He, however, held that such rule had not been brought to the notice of the traveling public and had been habitually disregarded and waived. This shows that the Circuit Court would have regarded as unreasonable the tender to the defendant railroad of five dollars for a five-cent fare, had it been admitted that defendant had promulgated a rule to that effect and had not waived it.

There is, therefore, no finding below that the rule is unreasonable, and, indeed, there is no fact appearing in the

record to suggest a doubt of its reasonableness. The difficulty of making change in the cotton-picking season in South Carolina is a well known fact, and the Court takes notice of the territory and the thick population and the numerous mill towns along the route between Augusta and Aiken, which renders it probable that numerous fares will be collected on the defendant electric railway between these points on a single trip. To require defendant to furnish change for every bill presented would be unreasonable.

The California and New York courts agree upon the proposition "that a passenger upon a street railway is not bound to tender the exact fare, but must tender a reasonable sum, and the carrier must accept such tender and furnish change to a reasonable amount;" but in California the Court, in view of local conditions, held that a tender of a gold coin of five dollars, the lowest gold coin in use in that section, for a five-cent fare, was reasonable. *Barrett* v. *Market St. Ry. Co.*, 81 Cal., 295, 15 Am. St. Rep., 62, 6 L. R. A., 336; whereas, in New York it is held that conductors cannot be required to furnish change for a five-dollar bill in payment of street car fare, and that a rule of the company requiring change to be made to the amount of two dollars is reasonable. *Barker* v. *R. R. Co.,* 151 N. Y., 237, 56 Am. St. Rep., 626, 35 L. R. A., 489.

Conceding that the conductor had more than five dollars in change at the time plaintiff tendered his bill, that did not make it the conductor's duty to so deprive himself of change as to be unable to meet the reasonable requirements of the trip. Suppose he had $6.80 in change at the time; if he had given plaintiff $4.95 of that sum he would thereby have rendered himself unable to give change to the next passenger presenting a two-dollar bill. If he had failed to make change for such next passenger, in breach of the rules of the company, would he not have violated the right of such passenger? Could not such passenger say: "You must change my two-dollar bill because your rules require it." Can it possibly be a wilful breach of duty to the first pas-

senger to decline to do that which would reasonably result
in a breach of duty to the second passenger? It is true that
the conductor on a number of occasions made change for
five dollars, but this was when he had "plenty of change,"
and this was not in disregard of the rules, but in strict con-
formity thereto. "Plenty of change" does not mean plenty
for a single transaction, but plenty for the reasonable
requirements of the trip. The conductor must necessarily
be allowed some discretion in deciding whether he has such
an amount in change for the probable demands of the trip
as would allow him to change over two dollars in a particu-
lar case.

We fail to find a scintilla of evidence in the record tend-
ing to show that the rule of the company had been habitu-
ally disregarded and waived. Indeed, not one of the wit-
nesses who testified as to seeing the conductor change a
five-dollar bill previously to the occasion in question says
that it was done after the 4th November, 1907, when the
rule was adopted. The rule had been recently adopted
before the occasion in question and possibly it was negli-
gence to fail to give some public notice of it. But, as
declared in the New York case above cited, it is not the
duty of the carrier to bring home to each passenger a per-
sonal knowledge of the existence of a reasonable rule.
When notice of the rule was brought home to the plaintiff,
it was his duty to make an effort to comply, and yet it
appears, by his own testimony, that he knew some of the
people on the car, but did not try to borrow a nickel, and
there is not a particle of evidence that he made the slightest
effort to have his bill changed by his fellow-passengers.

The judgment of the Circuit Court is reversed and the
case remanded for a new trial.

MR. JUSTICE GARY, *dissenting.* This is an action for
damages against the defendant, a corporation operating a
line of railway by electric power between the cities of
Augusta and Aiken.

The complaint alleges that on the 10th of November, 1907, the plaintiff boarded a passenger car of said company at Langley, intending to go to Warrenville, and that, for his fare upon the said car, he tendered to the conductor a $5.00 bill, said money being tendered for the purpose of taking out the legal change for transporting him as a passenger, to wit, five cents; but that said conductor unlawfully refused to accept said money and to allow him to ride as a passenger upon said car; and, against the protest of the plaintiff, he stopped the car and negligently, wilfully and wantonly ordered the plaintiff to leave said car, and forcibly ejected him therefrom.

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, "for that it appears upon the face of the complaint that the plaintiff failed and refused to tender the legal fare required of him, and that, upon his failure to do so, he became a trespasser and was properly ejected."

The demurrer was overruled, and the defendant, thereafter, set up as a defense "that its rule does not require conductors to furnish change for money tendered by passengers, for fares, in a bill or coin of a denomination in excess of two dollars, and that such rule is reasonable and was communicated to the plaintiff when he offered the five-dollar bill."

J. A. Toole, a witness for the plaintiff, testified as follows: "I was near the front of the car when the conductor came to collect, for he came to me first; in order to pay my fare, I gave him one dollar; in order to change my dollar, he ran his hand in his pocket and got a handful of money; he got the money out of his right-hand pocket; it was silver money; it was mixed, dollars and halves; he had some five or six dollars in his hand; in addition to that, I saw a money case on him."

Jane Williams, another witness in behalf of the plaintiff, testified: "I saw the conductor taking up the fares; I noticed the cash case; it looked like it was filled—the places that

the money stayed in; I could not see any space between the money and the top of the space."

The following statement appears in the record: "It is admitted that Mrs. Hillman, Harper Clark, G. V. Johnson, Willis Busch, J. A. Toole, John Arrinder and J. P. Howard, who are witnesses present at the trial, will testify, and this statement is agreed upon in lieu of putting them on the stand, and for the purpose of saving time, that they have all at least once, and some of them as frequently as three times, seen conductors of the defendant company, on various cars, change five-dollar bills to take the fare out—either of the witnesses or other passengers—none of them has ever seen a conductor refuse to change a five-dollar bill, except on this occasion."

At the conclusion of plaintiff's evidence, defendant moved for a nonsuit, which was overruled; and then moved for a nonsuit as to the cause of action, based on the claim for punitive damages, which was likewise overruled.

When the conductor was on the stand as a witness for the defendant, he was asked, on cross-examination, if it was not a fact that he often changed five dollars for people. His answer was, "I do when I have plenty of change; I don't frequently change five dollars; I do sometimes, when I have plenty of change." The defendant also testified that he only had $5.00 in change.

In the rule mentioned in the defense it is provided that conductors are requested to accommodate passengers, if possible or convenient, for amounts exceeding $2.00. The magistrate before whom the case was tried rendered a judgment in favor of the plaintiff for one hundred dollars.

In his report of the case the magistrate said: "I gave the case very careful attention and consideration, and was convinced, from the testimony, that the conductor had more than five dollars when the plaintiff tendered him his five-dollar bill, and I came to the conclusion that, having this amount of money with him, it was unreasonable in the conductor to refuse to change the money.

"I believe that in refusing, when he had the change, that the conductor did not act in accordance with the spirit of the rule, which the defendant relied on, and, even if he did, I would consider any rule that allowed a conductor to refuse to make change, when he had the money with him, an unreasonable rule, especially when, as in this case, no notice had been given to the public that there was such a rule."

On hearing the appeal from the judgment rendered by the magistrate, his Honor, the Circuit Judge, filed an order dismissing the appeal, in which he made the following findings of fact:

"I have determined that the exceptions should all be overruled, and the magistrate's finding of fact and the verdict below should be affirmed, it being my conclusion and my finding of fact that the evidence in the case is such as to entitle the plaintiff to a verdict for both actual and punitive damages.

"I am inclined to hold that a tender of five dollars to pay a five-cent fare would be disproportionate to the amount of the fare, and that with a proper rule on the part of the carrier upon the subject, in existence and actually enforced, I think that the carrier could not be forced to furnish change for so large an amount; but in this case the rule introduced in evidence had not in any manner been brought to the notice of the traveling public; but, on the contrary, and particularly the testimony affirmatively established, that it was habitually disregarded, and that its provisions were waived by the defendant company."

The defendant appealed upon several exceptions, the first of which is as follows: "Because his Honor, the presiding Judge, erred in not sustaining defendant's appeal, on each and every ground thereof."

Rule V of the Supreme Court provides that "an exception, for the purpose of an appeal, must contain a statement of the proposition of law or fact which it is desired to review; and a mere reference taken to the report of the master or referee, or to the decree of a judge of probate,

will not be sufficient, and an exception so taken will not be considered."

In the case of *Jumper* v. *Bank,* 39 S. C., 296, 17 S. E., 980, the eleventh exception was: "Because the presiding Judge refused defendant's 1st, 2d, 4th, 6th, 8th, 9th, 11th and 12th requests to charge." This Court said: "The 11th exception is too general for consideration."

The rule announced in that case is applicable to this exception.

The second exception is as follows:

"Because his Honor, the presiding Judge, erred in not holding that the magistrate should have sustained defendant's demurrer."

It must be borne in mind that the rule of the company, mentioned in the defense, was not before the Court for consideration when the demurrer was argued.

The exception under consideration does not contain "a statement of the proposition of law which it is desired to review," but waiving that objection, it cannot be sustained, for the following reasons:

1. When the defendant desires to raise the question whether the amount tendered by a passenger is reasonable, the proper practice, which was followed by the defendant in this case, is to set up as a defense that the amount tendered was unreasonable.

2. The reasonableness of a rule is a mixed question of law and fact, except in plain cases.

"There are many cases in which the reasonableness of the rule depends, in the particular instance, upon disputed facts and circumstances, and, where this is true, it may perhaps be called a mixed question of law and fact; but when the facts are undisputed, we think it clear, both upon principle and according to the weight of authority, that the question is one of law for the Court." Elliott on Railroads, sec. 202.

This language is quoted with approval in the case of *Bussey* v. *C. & W. C. Ry.,* 78 S. C., 352.

The Court cannot tell, until the introduction of the testimony, whether the facts and circumstances upon which the question of reasonableness depends will be in dispute, hence the demurrer raises the question of unreasonableness prematurely. The facts in the case under consideration were in dispute, yet the plaintiff would have been denied the right to have them determined, either by the presiding Judge or the jury, if the demurrer had been sustained.

We have been able to find only two cases in which the question arose, whether the tender of $5.00 in amount by the passenger was reasonable, and in both those cases the Court took into consideration the respective local conditions.

The first of these cases is *Barrett* v. *Ry. Co.*, 15 Am. St. Rep. (Cal.), 61, in which it was held that a passenger on a street railroad is not bound to tender exact fare, but he must tender a reasonable sum, and, if he does so, the carrier is bound to accept the tender and furnish change to a reasonable amount; also, that the tender of a five-dollar gold piece is a reasonable sum.

The Court, in taking into consideration local conditions, said: "It is a well known fact that the five-dollar gold piece is practically the lowest gold coin in use in this section of the country."

The second of these cases is *Barker* v. *R. R. Co.*, 56 Am. St. Rep. (N. Y.), 626, in which it was held that a tender by a passenger of a five-dollar bill, in payment of five cents fare, is unreasonable, when the rules of the company do not require its conductors to furnish change beyond the amount of two dollars.

The Court used this language: "There is no evidence of a custom on the part of the plaintiff or of the public of tendering to defendant five dollars in payment of a five cents fare and receiving the change, nor of any rule of the defendant imposing upon their conductors the duty of furnishing passengers with change in so large an amount. * * * There is no evidence which would have warranted the trial Judge in submitting to the jury the question whether the

plaintiff's tender of the five-dollar bill, under the circumstances, was unreasonable. * * * In the case at bar, the reasonableness of the rule established by the defendant is obvious. In a large city like New York the round trip of a car of any street line means a very considerable number of fares paid in and the necessity for the conductor to carry and pay out a large amount of small change. * * * It is quite possible that there existed local reasons for the decision in California, as the Judge writing the opinion suggested that the five-dollar gold piece was practically the lowest gold coin in use in that section of the country."

In a note to the case of *Barker* v. *Ry. Co.,* also reported in 35 L. R. A., 489, we find the following:

"The New York case evidently allows for a possible difference between the present condition of affairs in New York and the condition in California when the Barrett case was decided."

This exception is overruled.

The third exception is as follows: "Because his Honor, the presiding Judge, erred in not holding that the magistrate should have sustained the defendant's motion for a nonsuit as to the entire cause of action."

By reference to the testimony hereinbefore set out, it will be seen the company contemplated that, under certain circumstances, the conductors would furnish change for amounts tendered exceeding $2.00, and that the conductors complied with the request of the company in this respect.

The magistrate found, as matter of fact: (1) that the conductor had more than $5.00 in change when the plaintiff tendered the bill; (2) that it was unreasonable for the conductor to refuse to change the money; and (3) that no notice had been given to the public that there was such a rule as that set up by the defendant.

The Circuit Judge found the following facts: (1) That the rule had not, in any manner, been brought to the attention of the traveling public; (2) that it was habitually dis-

regarded; and (3) that its provisions were waived by the defendant. *Bussey* v. *Ry.*, 78 S..C., 352.

These findings are not subject to review, but are conclusive upon this Court. *Jenkins* v. *Ry.*, 73 S. C., 289, 292, 53 S. E., 999.

The fourth exception is as follows: "Because his Honor, the presiding Judge, erred in not holding that the magistrate should have sustained the defendant's motion for nonsuit as to the cause of action based on the claim for punitive damages."

If the conductor had in his possession the amount of change mentioned in the testimony of the witnesses for the plaintiff when he refused to change the bill, although, as found by the magistrate and Circuit Judge, the public did not have notice of the rule—that it was habitually disregarded, that it was waived—and that the conduct of the conductor in refusing to furnish change was unreasonable, the inference that the rights of the plaintiff were recklessly disregarded might well have been drawn by the magistrate and Circuit Judge. *Norman* v. *Ry.*, 65 S. C., 517, 44 S. E., 83.

The remaining exceptions merely raise the question that there was no evidence to support the judgment of the magistrate, and that there was no evidence of punitive damages, which questions have already been disposed of.

For these reasons I dissent.