### FREDERICKS v. COMMERCIAL CREDIT CO. *ET AL.*

#### (143 S. E., 179)

1. TROVER AND CONVERSION—WHETHER PLAINTIFF CONSENTED TO TAK-
ING OF HER AUTOMOBILE UNDER INVALID MORTGAGE, AND WHETHER
DEFENDANTS ACTED NEGLIGENTLY OR WILLFULLY, SO AS TO JUSTIFY
PUNITIVE DAMAGES, HELD, UNDER EVIDENCE FOR JURY.—In action
for taking and detention of automobile under invalid chattel mort-
gage purchased by defendant from dealer who sold car to plain-
tiff's husband, evidence held sufficient to present issues for jury
whether plaintiff consented to the taking of the car and whether
conduct of defendants in taking and detaining it was only negli-
gent or result of mistake or was reckless or willful so as to jus-
tify verdict for punitive damages.

2. APPEAL AND ERROR—CREDIBILITY OF WITNESSES IS FOR JURY, NOT FOR
APPELLATE COURT.—It is not for Supreme Court, on appeal, to pass
on credibility of witnesses, but that is matter for the jury.

3. APPEAL AND ERROR—CHARGE THAT JURY, IN ASSESSING DAMAGES,
MIGHT CONSIDER ANY INJURY TO AUTOMOBILE WHILE IN DEFEND-
ANTS, POSSESSION, HELD NOT PREJUDICIAL, THOUGH THERE WAS NO
EVIDENCE OF INJURY.—Charge that jury might consider as element
of actual damages any injury done to plaintiff's automobile by de-
fendants, who took and detained it under invalid chattel mortgage,
*held* not prejudicial error, though there was no evidence in record
showing that automobile was injured in any way while in defend-
ants' possession.

4. PRINCIPAL AND AGENT—LAWYER MAY BECOME ANOTHER'S AGENT
FOR PURPOSES OTHER THAN PRACTICE OF HIS PROFESSION.—That one
is a lawyer does not prevent his becoming the agent of another for
purposes other than the practice of his profession.

5. PRINCIPAL AND AGENT—EVIDENCE ON ISSUE OF DAMAGES HELD TO
SUPPORT FINDING ATTORNEY TAKING AUTOMOBILE UNDER INVALID
CHATTEL MORTGAGE ACTED AS AGENT FOR CREDIT COMPANY.—In ac-
tion for the taking and detention of automobile under invalid chattel
mortgage, purchased by defendant from dealer who sold car to
plaintiff's husband, evidence *held* sufficient to support finding that
defendant attorney, who actually took possession of the car, was
agent of defendant credit company, for purposes of assessing dam-
ages as between them.

6. TRIAL—AWARD OF GREATER PUNITIVE DAMAGES AGAINST AGENT
COMMITTING TORT THAN AGAINST PRINCIPAL DOES NOT INVALIDATE

VERDICT.—Award of greater punitive damages against principal than against agent whose tortious act constituted basis of verdict does not invalidate verdict.

Before WILSON, J., Richland, March, 1927.   Affirmed.

Action by H. S. Fredericks against the Commercial Credit Company and another.   Judgment for plaintiff, and defendants appeal.

*Messrs. Hunter A. Gibbes, Jas. H. Hammond,* and *F. S. Porter,* for appellants, cite: *"Conversion":* 2 Strob., 370 1 Rich., 318; 130 S. C., 324; 2 Mill Const., 72, 78; 1 McCord, 428; 2 Spears, 487. *Punitive damages:* 90 S. C., 439; 69 S. C., 165; 76 S. C., 194; 60 S. C., 49; 69 S. C., 434; 93 S. C., 125; 64 S. C., 423; 62 S. C., 442; 57 S. C., 331; 35 S. C., 493; 54 S. C., 498; 53 S. C., 210; 52 S. C., 344; 57 S. C., 228; 60 S. C., 74. *Measure of damages for acts of an attorney:* 52 L. R. A., 883; 31 L. R. A., 862; 4 C. Y. C., 974; 113 S. C., 522. *"Wantonness and willfulness":* 72 S. C., 354; 91 S. C., 220.

*Messrs. Cooper & Winter,* and *A. F. Spigner,* for despondent, cite: *Punitive damages:* 101 S. E., 856; 69 S. C., 160; 80 S. C., 7; 113 S. C., 499; 101 S. C., 101; 113 S. C., 109. *"Damages":* 62 S. C., 150. *Unequal amounts of punitive damages properly awarded:* 138 S. E., 687; 140 S. E., 443.

April 18, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for the recovery of damages on account of the alleged willful and unlawful taking and detention of an automobile.

The complaint alleges that on or about the 16th day of November, 1925, the plaintiff became the owner of one Chevrolet automobile; that on or about the 5th day of March, 1926, the defendant Porter, acting for and as the agent of

the defendant Commercial Credit Company, came to her home in Columbia, and, without her consent and over her protest, seized and carried away her automobile; that the taking of the automobile by the defendants was unlawful, willful, wanton, and in utter disregard of her rights, and that the defendants in the same manner detained the automobile for many hours and converted it to their own use; and that at the time of such taking the defendants knew, or by the exercise of ordinary care should have known that the company had no right, title, or interest in the same, and that she was the sole owner thereof.

The answer of the defendants denies unlawful, willful or wanton taking of the car, and alleges: That the defendant Commercial Credit Company (hereinafter referred to as the Company) took possession of the car under a chattel mortgage executed by William A. Thornton, dated November 23, 1925, in favor of Barrow-Chevrolet Company, duly recorded in the office of the Clerk of Court for Richland County, and purchased by the Company from Barrow-Chevrolet Company without any knowledge of any infirmity therein; that, the mortgage and the note secured thereby being past due and unpaid, the Company ascertained that Thornton had left South Carolina for parts unknown, and that the automobile covered by the mortgage was in the plaintiff's possession; that during the late afternoon of March 5, 1926, J. Cockfield, a representative of the Company, requested the defendant Porter to go with him to call on the plaintiff and make demand for the delivery of the car under the terms of the mortgage; that accordingly Cockfield and Porter called at the plaintiff's residence and stated to her that the Company had a mortgage on her automobile; that they exhibited the mortgage to the plaintiff, and that she agreed to deliver possession of the car, but told them she wished to use it that afternoon, and that, if they would return about 5 o'clock, she would deliver it to them; that about 5 o'clock they returned to her residence, and she delivered the car to them,

and it was stored at Harvin's garage; that on the next morning the plaintiff's husband, John E. Fredericks, called at the office of Hunter A. Gibbes, attorney for the Company, and that, after conversation between Gibbes and Fredericks and a telephone talk with Mrs. Fredericks, Gibbes, being assured that the plaintiff had purchased the car seven days prior to the date of the mortgage, expressed regret that it had been taken and had it delivered at the plaintiff's residence; that the mortgage under which the defendants took possession of the automobile was apparently genuine and the Company did not know there was any question as to its validity, and that the car was taken in good faith with an honest belief that the Company had a genuine claim on it by virtue of the mortgage; and that defendant Porter is not an agent or employee of the Company, and is in no way liable to the plaintiff.

During the trial of the case, motions for a nonsuit and for a directed verdict were made by the defendants and were refused. The jury rendered a verdict of $25 actual damages against both defendants, $1,000.00 punitive damages against the defendant Commercial Credit Company, and $5 punitive damages against the defendant Porter. From the verdict and judgment both defendants appeal.

The main points made by the exceptions are:

I. That there was no testimony tending to show that the taking of the car was unlawful.

II. That the testimony fails to show that the seizure and detention of the plaintiff's automobile were wanton or willful, so as to justify a verdict for punitive damages.

III. That the Court erred in charging the jury that the plaintiff might recover damages for injury, if any, done to the automobile by the defendants, there being no testimony showing damage to the car.

IV. That the finding of punitive damages against Porter for $5 and against the Company for $1,000 was unlawful.

I and II.   We will discuss the first and second questions together.   It is undisputed that on November 16, 1925, the plaintiff's husband, John E. Fredericks, bought the automobile in question from the Barrow-Chevrolet Company, paying cash for it, and gave it to his wife as a birthday present; the car being registered with the State Highway Department in her name on that day.   It is also undisputed that the defendant Company purchased from the Barrow-Chevrolet Company a mortgage apparently executed by William A. Thornton, in favor of Barrow-Chevrolet Company, dated November 23, 1925, conveying the same car purchased by Mr. Fredericks, and recorded on December 14, 1925, and that the defendant Company at that time had no information which would lead it to question the validity of the mortgage.

The car was taken under the terms of the mortgage.   It was not contended in the answer or at the trial that the Company's claim was superior to the plaintiff's—in fact, it is conceded that the mortgage was fraudulent—but the defendants attempted to show, by way of defense, that the plaintiff consented to the taking, and that their acts were done in good faith, in reliance upon their supposed rights under the mortgage.

The plaintiff's testimony tended to show that she did not consent to the taking of the car; that on the occasion of the first visit of Porter and Cockfield to her residence, about 2 o'clock on March 5, 1926, she told Porter that her husband had paid cash for the car and had given it to her as a birthday present, that it was hers, and that he could not take it; that he insisted that, if the numbers on the car corresponded with the numbers on the mortgage, he would have to take it; that she asked him to wait until her husband came home, which would be some time between half past 5 and 6; that she told him she had to go down town in the car and that he said he would let her have it till half past 5; that they then checked the numbers on the car; that after going down town

in the car she drove it in the driveway and took out the key; that about a quarter after 5, before her husband had returned, Porter and Cockfield came back to take the car; that she talked with Porter at the door of her home, and that he followed her into the house, where she again protested against the taking of the car; that she tried her best to keep the car until her husband should arrive, but that Porter told her there was no use to argue, and that finally, feeling there was nothing else to do, she gave him the key, or opened her hand and he took it; that Porter was not discourteous, but was "very strong" when he gave her to understand that the car belonged to the Company.

The testimony of John E. Fredericks, the plaintiff's husband, tended to show that upon his arrival at his home about 5:30 on the afternoon of March 5, he learned that the car had been taken, and found his wife crying and excited; that he immediately telephoned Hunter A. Gibbes, attorney for the Company, who seemed very much disturbed because called at that hour, and protested against the taking of an automobile that he owned outright, had bought and paid cash for; that Gibbes stated that he had a prior claim on the car, and suggested that Fredericks call at his office the next morning if he wanted to see the claim; that the next morning he saw Gibbes, who told him he would have to prove that his purchase was ahead of the Thornton transaction, as he claimed; and that, after some argument and a telephone conversation with the plaintiff, Gibbes returned the car to the plaintiff's home.

Testimony of the defendants' witnesses tended to show that before taking the car the Company had made unsuccessful efforts to locate Thornton and collect the debt; that prior to the taking of the automobile the Company knew that Barrow had given out a lot of fraudulent mortgages and itself had some of these mortgages, and that Barrow was committed to jail on February 15, 1926; that the defendant Porter is an attorney at law, associated in practice with Hunter

A. Gibbes, attorney, to whom the mortgage was sent by the Company for collection, and, at the request of J. C. Cockfield, a representative of the Company, went with him to the plaintiff's home to demand possession of the car; that, before Porter and Cockfield went to the plaintiff's home, Porter ascertained from the State Highway Department that the plaintiff owned the automobile at that time but did not get information as to the date she acquired the title, and that, after talking with the plaintiff on their first visit to her home and in the interval between the first and second visits, he did not attempt to get any information from the Highway Department as to the date of her title; that on his first visit, between 1 and 2 o'clock in the afternoon, he explained his business, and told the plaintiff he could not take the car, but could make demand for possession, and, if she did not give it up, he would have to make claim and delivery for it; that she said she wanted to go up town, and he told her she could use the car that afternoon; that she said she would like for Mr. Fredericks, who would return at 5:30, to be there, and that he asked her to have him at the house at that time; that between 5 and 5:30 he returned to the house, and, after some further conversation between them, she finally gave him the key to the car; that he did not take the key from her nor force her to give it to him nor make any threats against her.

Porter denied that the plaintiff had told him she had paid cash for the car, or that Mr. Fredericks had given it to her as a birthday present, or that she forbade him to take it, and stated that Mrs. Fredericks voluntarily surrendered the automobile. He said also that, if he had known the date of her title, he would not have taken the car, and admitted that this date could have been obtained from the State Highway Department. The witness Cockfield testified that he accompanied Porter on both visits to the plaintiff's home, and that she was willing for them to take the car. Testimony for the defendants also tended to show that the automobile was

stored on the afternoon of March 5 and returned to the plaintiff the next morning, and that it was not abused or driven while in storage. Hunter A. Gibbes testified that he was handling the mortgage for collection, and that, as soon as he became assured on the morning of March 6, 1926, that the plaintiff's claim was superior to that of the Company, he had the car returned to her at her home.

The testimony in the case was conflicting and susceptible of more than one inference. It was therefore for the jury to say whether the plaintiff consented to the taking of the car and whether the conduct of the defendants in its taking and detention was only negligent or the result of a mistake or whether it was reckless or willful. The issue was clearly made, and it is not for this Court to pass on the credibility of witnesses—that is a matter for the jury.

III. The trial Judge charged the jury that they might consider as an element of actual damages any injury done to the automobile, if any, by the defendants. The record does not disclose that there was any testimony offered showing that the automobile was injured in any way while in the hands of the defendants. However, when the charge on this point is considered in its entirety, it does not appear that the error complained of was prejudicial.

IV. The appellants contend that the relationship of principal and agent did not exist between the defendants, but that the alleged tortious act was committed by Porter acting in the capacity of attorney for the Company; that, if the Company suffers loss through acts of the attorney, it should have redress against him, but that such redress is impractical in this case where the punitive damages against the attorney amount to $5 and the punitive damages against the Company amount to $1,000, and that therefore the award of punitive damages in unequal amounts is unlawful. The testimony shows that Porter is by profession a lawyer, but the fact that one is a lawyer does not prevent his becoming

the agent of another for purposes other than the practice of his profession. There is ample testimony in this case to support a finding that Porter was the agent of the Company. Under the case of *Johnson v. Railway Co.,* 142 S. C., 125; 140 S. E., 443, in which the point involved is ably discussed by Mr. Justice Blease, the award of greater punitive damages against the Company than against Porter does not invalidate the verdict.

In addition to the questions already discussed, the exceptions raise several minor points, which we have carefully examined, and find without merit.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : Boiled down to its last analysis, the net results of the contracts between the defendant Company and the Barrow-Chevrolet Company, and between the defendant Company and the plaintiff Mrs. Fredericks, are that the defendant Company has been victimized by the Barrow-Chevrolet Company to the extent of $660, and has been subjected to a judgment of $1,025 in favor of the plaintiff Mrs. Fredericks, for what appears to me to have been a perfectly reasonable and honest exercise of what they considered a *bona fide* claim of right, though a mistaken one. The last-named result, under the circumstances, I do not think should be sustained by this Court.

The facts which developed a deliberate scheme of fraud on the part of the Barrow-Chevrolet Company, are these:

On November 23, 1925, one W. A. Thornton, whose connection with the Barrow Company is not made clear, but who appears to have been the "dummy" in the business, executed to that Company a purchase-money note and mortgage for $636, covering a sedan automobile. The mortgage was re-

corded on December 14, 1925, in the proper office in Columbia. The purchase price was payable in monthly installments beginning in December, 1925.

Shortly after the recording of the mortgage it and the note were assigned for value to the defendant Company, which began in December, 1925, to attempt collection of the installments as they fell due, but without success. In March, 1926, the defendant put the papers in the hands of Hunter A. Gibbes, Esq., a most reputable attorney of the Columbia bar, who made every effort to locate the mortgagor Thornton, who it appears had fled to the State of Florida. He learned from the State Highway Department that the car was in the possession of the plaintiff Mrs. Fredericks. On March 5, 1926, J. Cockfield, an agent of the defendant Company, with the defendant F. S. Porter, an attorney in the office of Hunter A. Gibbes, Esq., went to the home of the plaintiff for the purpose of seizing the car under the Thornton mortgage. They exhibited the mortgage to her and with her checked up the numbers on the car, identifying it as the car covered by the mortgage. Mr. Fredericks was not at home at the time and Mrs. Fredericks requested Cockfield and Porter to leave the car with her and return about 5 p. m. that afternoon, which they consented to do   At 5 p. m. they returned and demanded possession of the car; Mrs. Fredericks offered no resistance, and delivered the keys to Porter. The car was unlocked and taken by Cockfield and Porter. About 10 o'clock the next morning, March 6th, Mr. Fredericks, husband of the plaintiff called at the office of Mr. Gibbes. In an interview between them Mr. Gibbes became satisfied from a phone conversation between Mr. and Mrs. Fredericks that Mr. Fredericks had purchased the car from the Barrow people on November 16, 1925, for cash, and given it to his wife, seven days before the date of the Thornton mortgage. He immediately expressed regret that the car had been seized; that it was a mistake due to the rascality of the Barrow Company; and immediately

phoned to the garage where the car was stored to return the car to Mrs. Fredericks, which was done in a few minutes.

It is conceded that the claim of the plaintiff was superior to the right of the defendant Company under the Thornton mortgage. The Company therefore had no right to seize the car, and was responsible as a trespasser for doing so. The disputable point in the case was whether the seizure was made under circumstances warranting the infliction of punitive damages. The plaintiff admitted that the conduct of Cockfield and Porter was entirely free from offense; that Porter was courteous but firm. She was allowed to keep the car during the afternoon until some time about 5 o'clock, and the next morning, as soon as Mr. Gibbes was informed of the true status of the respective claims, the car was promptly returned. That the seizure was directed by Mr. Gibbes, under a *bona fide* belief in the right of the defendant Company, and without circumstances of fraud, force or even discourtesy, no one who knows him could entertain a doubt.

The only circumstance which could be considered at all blameworthy in the whole transaction is that Porter, in tracing the car, could have found out from the same source which helped him to locate it, the date of the transfer from Barrow to Mr. Fredericks, November 16th. It must be admitted that this is information which he could have obtained; but his failure to do so was no more than negligence. Taken in connection with the prompt recognition by Mr. Gibbes of the situation, I cannot appreciate the justice of mulcting the already victimized Company in $1,000 punitive damages for holding the car 17 hours.

"Exemplary damages may be recovered whenever it appears that defendant's taking of the property was characterized by malice, oppression, or a wanton disregard of the owner's rights, but not against one taking under a *bona fide* claim of right." 38 Cyc., 2104, citing *Vine v. Casmey*, 86 Minn., 74; 90 N. W., 158. *Jones v. Rahilly*, 16 Minn.,

320 (Gil., 283). *Pennington v. Redman,* 34 Utah, 223; 97 P., 115.

"And so one is not liable for exemplary damages, if he acts in good faith, under an erroneous sense of duty or right, without any intention to oppress or defraud or without any actual oppression or indignity." 8 R. C. L., 592. *Philadelphia, W. & B. R. Co., v. Hoeflech,* 62 Md., 300; 50 Am. Rep., 223. *Louisville, N. & G. S. R. Co. v. Guinan,* 11 Lea, 98 (Tenn.); 47 Am. R., 279. *Jopling v. Waterworks,* 70 W. Va., 670; 74 S. E., 943; 39 L. R. A. (N. S.), 814. *Anderson v. Sloane,* 72 Wis., 566; 40 N. W., 214; 7 Am. St. Rep., 885; note, 27 Am. Dec., 686. *Best v. Allen,* 30 Ill., 30; 81 Am. Dec., 338.

"In the latest edition of Sutherland on Damages, Vol. 2, p. 1093, § 393, in discussing exemplary damages, it is said: 'If a wrong is done willfully—that is, if a tort is committed deliberately, recklessly or by willful negligence, with a present consciousness of invading another's rights or of exposing him to injury, an undoubted case is presented for exemplary damages. * * * These damages are allowable only when there is misconduct and malice, or what is equivalent thereto. *A tort committed by mistake in the assertion of a supposed right,* or without any actual wrong intention and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment, where the doctrine of such damage prevails.' " *Gwynn v. Tel. Co.,* 69 S. C., 434; 48 S. E., 460; 67 L. R. A., 111; 104 Am. St. Rep., 819.

"The case of *Gwynn v. Tel. Co.,* 69 S. C., 434; 48 S. C., 460; 67 L. R. A., 111; 104 Am. St. Rep., 819, is authority for the proposition that '*a tort, committed by mistake in the assertion of a supposed right,* or without any actual wrong intention, and without such recklessness or negligence as evinces malice or a conscious disregard of the rights of others, will not warrant the giving of damages for punish-

ment.'" *Funderburg v. R. Co.,* 81 S. C., 141; 61 S. E., 1075; 21 L. R. A. (N. S.), 868.

"As to the exemplary damages, it is said in *Gwynn v. Tel. Co.,* 69 S. C., 444 [48 S. E., 460; 67 L. R. A., 111; 104 Am. St. Rep., 819]: 'An act based on the belief that it was legal and done for the sole purpose of protecting actor's right will not subject actor to punitive or vindictive damages.'" *Henry v. R. Co.,* 93 S. C., 125; 75 S. E., 1018. *Walker v. Glenn,* 124 S. C., 501; 117 S. E., 723.

I think that the judgment should be reversed, and a new trial ordered, unless the plaintiff remit all of the judgment in excess of $25.

## On Petition for Rehearing

*Per Curiam.* The defendant appellants have filed a petition in this case, asking for a rehearing. After careful consideration of the grounds stated in the petition, we are satisfied that no material question, either of law or of fact, has been overlooked or disregarded by the Court.

It is therefore ordered that the petition be dismissed, and that the order staying the remittitur be revoked.

Mr. Chief Justice Watts, and Messrs. Justices Blease, Stabler, and Carter, concur.

Mr. Justice Cothran (dissenting): I think that the petition should be granted. The decision, in my opinion, is wrong in principle and subversive of the doctrine thoroughly established by the decisions of this Court and all others which have considered the question. It "reaps the bearded grain in a breath." *Gwynn v. Tel. Co.,* 69 S. C., 434; 48 S. E., 460; 67 L. R. A., 111; 104 Am. St. Rep., 819. *Funderburg v. R. Co.,* 81 S. C., 141; 61 S. E., 1075; 21 L. R. A. (N. S.), 868. *Henry v. R. Co.,* 93 S. C., 125; 75 S. E., 1018. *Walker v. Glenn,* 124 S. C., 501; 117 S. E., 723. *Fort v. R. Co.,* 64 S. C., 423; 42 S. E., 196. *State v. Doig,* 2 Rich., 182. *State v. Alexander,* 14 Rich., 253. *State v. Toney,* 15 S. C., 412. *Alvinger v. Co.,* 29 S. C., 265; 7 S. E.,

493; 13 Am. St. Rep., 716. *Kibler v. R. Co., 62 S. C., 270;* 40 S. E., 556—all of which, without exception or reservation, declare, in the language substantially of the *Henry case:*

"An act based on the belief that it was legal and done for the sole purpose of protecting actor's right, will not subject actor to punitive or vindictive damages."