WEBER and another, Respondents, vs. WISCONSIN POWER & LIGHT COMPANY, Appellant.

*May 8—June 5, 1934.*

For the appellant there was a brief by *Schubring, Ryan & Petersen* of Madison and *H. W. Adams* of Beloit, and oral argument by *William Ryan* and *Ralph E. Axley* of Madison.

For the respondents there was a brief by *Fiedler & Garrigan* of Beloit, and oral argument by *E. C. Fiedler* and *Geo. A. Garrigan*.

FAIRCHILD, J. While the facts in this case differ in some details from those in the case of *E. L. Chester Co. v. Wisconsin Power & Light Co.* 211 Wis. 158, 247 N. W. 861, there is not such a difference as to change in any respect the application of the rules laid down in that case relating to the liability for negligence of the appellant and as to whether its negligence was a proximate cause of the damage. The only question upon this appeal meriting consideration relates to the jury's finding of the value of the personal property lost by the plaintiffs. No serious question is raised with respect to the jury's finding as to the value of the personal property belonging to Henry G. Mills or that of the stock of goods owned by the partnership, and our discussion will be confined to a consideration of the partnership furniture, fixtures, and equipment destroyed by the fire. The award for these items was $8,616.70.

Witnesses introduced by respondents testified as to the value of the fixtures. Except in the case of a typewriter

which was listed at $25, although the replacement price new thereof was $102.50, the figures they presented were based on replacement cost new. Taking the largest estimates presented by respondents, the total value of all the fixtures and equipment on the basis of replacement new was $11,036.67. No evidence was introduced by respondents as to any market price for used fixtures, the existence or non-existence of a second-hand market, or as to whether the type of fixtures contained in respondents' store could be purchased second-hand. Respondents did not predicate their claim for damages on market value, but on replacement value, and testified that the property was worth eighty-five per cent of the replacement value new. The jury actually allowed them eighty per cent of replacement value new.

Appellant produced two witnesses, Mr. Schmidt and Mr. Lederer, who testified as to the value of the fixtures and equipment. Mr. Schmidt testified in a rather general fashion that the value of fixtures "would not be more than thirty-five or forty cents on the dollar of the replacement prices." Mr. Lederer testified as to the new and used values of about seventy per cent of the individual items which were lost in the fire. On the average, his estimates of replacement cost new ran from seventy to seventy-five per cent of the estimates made by respondents' witnesses. His testimony with regard to used value, that is, the market price for second-hand equipment and fixtures in good condition, indicates that the cost of such equipment is, on the average, about forty per cent of his estimates of cost new.

The trial judge's instructions to the jury on the question of the value of fixtures and equipment were as follows:

"The furniture, fixtures, store and office equipment and other articles of personal property included in this question were the accumulation of years in the building up of plaintiffs' business. Some of them had been purchased years ago and some more recently. It is claimed on the part of the plaintiffs that while this property had no market value, it,

nevertheless, had a real value to them. In answering this question you may consider whether or not this property did or did not have a market value; and if it had no market value you may consider whether or not it had a real value to plaintiffs in connection with their mercantile business considered as a going business, and what would be a reasonable price for this property in a sale of the business—all as shown by the testimony in this case. It is the law that where there is no market value for certain kinds of property or where the market value does not represent the real value to the owners, testimony may be considered to show what such property is really worth in the business, and what a buyer would pay for it if he were buying the business but was not obliged to buy, and what one would take for such property in selling the business who was not obliged to sell. You will write as your answer to this question such a sum as you may find from the evidence in the case to be the real value of this property just before it was destroyed by fire. You should consider all the evidence bearing on this question. The burden of proof as to this question likewise rests upon the plaintiffs."

Appellant contends that although under these instructions reference was made to the duty of the jury to consider whether the property had a market value, when it came to instructing them as to what answer they were to make to the question, no instructions as to their duty to find the market value if one existed and represented the reasonable value of the property was given, but instead the jury was instructed to find the real value; that, in view of the preceding instructions, this was tantamount to instructing them that there was no market value for this property, that market value was not the real value, and that they were to use some other measure of damages.

The instructions, while it is possible to interpret them as requiring the jury to base their estimate on market value if one existed, nevertheless are ambiguous enough to be susceptible to the construction of which appellant complains. The jury's award of $8,616.70, whereas, under the undis-

puted evidence as to second-hand value, an award based on the latter would have been at most little more than half of that amount, shows plainly that they did use some basis other than market value.

The trial judge correctly stated the law when he said that in the absence of a market value other factors must be considered in determining the amount of damages. *E. L. Chester Co. v. Wisconsin Power & Light Co., supra; Allen v. Chicago & N. W. R. Co.* 145 Wis. 263, 129 N. W. 1094; 4 Sutherland, Damages (4th ed.), p. 4180, § 1099; 1 Sedgwick, Damages (9th ed.), p. 504, § 250. But where a market value does exist, that should be the determining element and other factors should not be considered unless peculiar considerations warrant their inclusion. In the present case, there is undisputed evidence that a second-hand market did exist in 1930, at least from the standpoint of a purchaser. Mr. Lederer testified with respect to a certain schedule of articles which included seventy or seventy-five per cent of all the fixtures and equipment involved in this case:

"The total replacement value new I got was $5,586.75. I have given you the figure for used value $2,211. That is sound and used value. Those values were given as used values in '30 which were the prevailing values at that time but of a lot more modern type, say the cabinets. In connection with some of these used values, I stated what they could be obtained for. There was very much used goods available that could be obtained in 1930. There was much of this very type of equipment in the market at that time because so many of the stores discontinued business. It is my judgment that these fixtures I have enumerated could be replaced at the prices I have indicated as used values in '30. I would have replaced them myself for that money with profit, about December 5, 1930."

Upon cross-questioning he testified:

"The entire Chicago market is swamped with furniture and fixtures of this kind. You can't find a market. You

can't give it away. There are some buyers and it is a slow market. In 1930 it had a market. It had a market that would reflect the real value of such fixtures."

In view of this uncontradicted testimony, it must be presumed that respondents in 1930 could have bought in Chicago used equipment, substantially similar in construction and condition to that which had been destroyed by the fire, and have been in the same position they formerly occupied. The mere fact that a market did not exist in Beloit is immaterial so long as one existed near by, and the jury in figuring the damages should have allowed the market value as it actually existed in 1930, plus the cost of transportation from the market to the place of use. 1 Sedgwick, Damages (9th ed.), p. 497, § 246; 4 Sutherland, Damages (4th ed.), p. 4177, § 1098.

There are some factors involved in this case which may serve to make the above rule inapplicable to certain items. Many of the articles involved were articles which could undoubtedly be replaced second-hand. Others, however, such as the built-in shelving and certain signs made especially for respondent, may have been so individual in nature that they could be replaced only by construction new. With respect to such items, respondent could not be adequately compensated except by allowing him cost, less depreciation. Other articles, for instance an old electric sign and an old gaslight machine, neither of which had been used for eighteen years, might have been shown by proper testimony to have been obsolete. Such equipment, if it appeared that it was not being used in the business and never would be used again, would have no value outside of salvage value, regardless of what it may have cost originally.

Two other contentions urged by appellant as grounds for reducing the damages are: (1) That most of the equipment involved here was from fifteen to thirty years old and consequently should be valued at much less than more modern equipment should be, and (2) that because respondent Mills'

income tax reports showed that the business had operated at a loss during the five years preceding the fire, the value of the fixtures in the store was substantially less than if it had been a profitable business. Neither of these contentions, under the circumstances of this case, is valid. As to the first, the equipment, although old, was nevertheless in good condition, serviceable, and adequate for the needs of the business. Respondents were entitled to damages which would enable them to secure the equivalent of that equipment and to supply their needs to the same extent the former ones did.

As to the second contention, if it were conclusively shown that respondents' business was so clearly on the down-grade that liquidation was inevitable, and that it was only a matter of time when they would be forced to close out and sell their fixtures for whatever they could get for them, that fact would operate in determining their value, since such value would then be gauged, not by what the fixtures were worth constructed in the store and used in the business, but by what they would be worth removed therefrom. *Johnston v. Albany Dry-Goods Co.* 12 App. Div. 608, 43 N. Y. Supp. 164. However, the evidence sufficiently shows that the business was a going one.

The failure of the trial judge to instruct the jury to take into consideration evidence as to the existing market value in 1930 of fixtures and equipment similar to those destroyed, and the evidence as to what items could be replaced by used equipment and what items could not, was error. Under such circumstances, the award of the jury cannot stand, and the case must be remanded for a new trial unless respondents consent to a reduction of the damages.

The testimony of Mr. Lederer as to the market value of the furniture, fixtures, and equipment covered about seventy per cent of all the items destroyed, and he testified that the total market value of these items was about $2,211. That testimony stands uncontradicted. The total replacement value new placed by respondents upon that equipment con-

cerning which appellant introduced no testimony as to market value, was $3,219.90. As to some of these items, Mr. Lederer testified as follows:

"In the figures I have given that includes all the fixtures, supplies, and everything illustrated on these exhibits, except that I omitted some things. I omitted two mirrors, approximately five feet by eight feet having some kind of carved frame. I got figures on mirrors but not the frames. I left out the mirrors entirely because equipment of this kind has no place in a business of this type. I also left out such items as coat hangers, I believe three hundred of them. Those have no value. They are customarily given by manufacturers of clothing to the dealer. Originally they are sold with garments by the manufacturer and the dealer in clothes can always get them from the manufacturer. I also left out of the figures such things as shoulder pads and supplies used by the dealer because items of this kind have to be replaced from year to year and there is no indication that they had been replaced for some time. I figured that they had no value at all. I also left out janitor's supplies, buckets and the like. I also left out the iron safe which would have neither fire nor burglar-proof rating. That takes in most of it, I believe."

Of the equipment referred to, the only substantial items are the mirrors, the coat hangers, and the iron safe, valued by respondents at $600, $150, and $175, respectively.

Appellant questions the inclusion of certain other items concerning which appellant introduced no testimony at all. The only inclusions which are sufficiently doubtful to merit discussion are an electric sign, a gaslight machine, and a letter-copying machine, valued by respondents at $250, $200, and $75, respectively. Respondent Mills was the only person who testified as to these. He said:

"The copying machine is a regular iron copying machine. It lasts forever, for making copies of letters or anything you want to make. It is a letter press, thirty years old, out of date, but still in use and serving the purpose. We made our copies on the Remington typewriter when the bookkeeper was there. When she was gone, I used this, because I am

not a typewriter or stenographer. I made copies of handwriting, where you turn the thing upside down and put it into the machine and then screw it down. I put that copying machine of ancient make in at $75. That is the replacement value. I think fifteen per cent. discount on that is enough. The machine is as good as the day I bought it. I still use it. . . ."

. ". . . We have the light machine intact in case we ever want to connect it we can connect it in a day's time. I haven't used it in eighteen years. I don't know what it is worth today, $200 is about the replacement price. I don't think ten per cent. would be its real value. It served its purpose and you can use it any time. . It was very handy. Under conditions we have had, I wish we had used it. For sixteen or eighteen years, we haven't used it. The electric sign listed here came down shortly before we installed the gas machine. That led up to the gas machine. That was probably eighteen or twenty years ago. I had used it about a year. It was as good as the day I put it in. I had it a matter of eighteen or twenty years. I used it one year. It has been stored away since I stopped using it, eighteen years. I don't know whether ten cents on the dollar would be a liberal price. That is the replacement price. I think this sign is worth fifteen per cent. less than the cost of replacement. It is stored upstairs where it is high and dry."

Under the testimony of either Lederer or Mills, a jury would not be justified in excluding the articles specified in estimating the amount of the damages, and consequently they will be treated the same as the rest of the articles on which no testimony as to second-hand market value was presented. While it is possible that some of this equipment could have been purchased second-hand, no testimony has been introduced to show that it could, or what the cost used thereof would be. Under the circumstances, the proper rule to apply is that laid down in the *Chester Case,* and which was substantially followed by the trial court in its instructions to the jury. In that case this court said:

"The fixtures were the accumulation of years of experience in the building up of this business. Some of them had

been purchased years ago and some more recently. No doubt the older fixtures had no market value, while they did have a real value to the plaintiff. The plaintiff testified that they were worth to him $20,000, and that such would be a reasonable price for them in a sale of the business. This appears to be a recognized way of estimating damages with reference to property of this nature. Where there is no market value, or where the market value does not represent the real value, testimony is admitted to show what they are really worth in the business and what the owner would pay for them if he was buying the business but was not obliged to buy, and what one would take for them in selling the business who was not obliged to sell. The jury fixed the value of these fixtures at $14,500. We think the evidence abundantly shows that they were worth that much to plaintiff's business."

Respondent Mills testified that a fair value of the fixtures in a going business would be eighty-five per cent of the replacement price. A fifteen per cent deduction from the total of $3,219.90 would leave the value of that equipment at $2,736.91. This, added to $2,211, the used value of the remaining equipment, would give a total of $4,947.91. This we consider the lowest amount at which a fair-minded jury properly instructed would probably assess the damages. There must be a new trial unless the respondents consent that the award of $8,616.70 for damages to furniture, fixtures, and equipment be reduced to $4,947.91.

*By the Court.*—Judgment reversed as to the item of $8,816.70 relating to the fixtures, and cause remanded for a new trial on that issue, but with the option to respondent, however, to avoid such new trial by electing, within twenty days after the filing of the *remittitur,* to take judgment for $4,947.91, with interest thereon to the date of judgment. In all other respects, judgment affirmed. Appellant's costs to be limited to $150.